IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VANESSA CROWE
Reg. 15427-002
FCI Marianna
Satellite Camp
P.O. Box 7006
Marianna, FL 32447

GLEN GALEMMO
Reg. 72083-061
FCI Williamsburg
Satellite Camp
P.O. Box 340
Salters, SC 29590

*on behalf of themselves and others similarly situated*,

      *Plaintiffs,*

  v.

FEDERAL BUREAU OF PRISONS,
320 First St NW
Washington, D.C. 20534

COLETTE PETERS, *in her official capacity as Director of the Bureau of Prisons*,
320 First St NW
Washington, D.C. 20534

      *Defendants.*

No. 1:24-cv-\_\_\_\_\_

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
(Administrative Procedure Act: Bureau of Prisons regulation violates First Step Act)

**INTRODUCTION**

In the First Step Act of 2018, Congress created a system under which many people incarcerated in the custody of the Federal Bureau of Prisons (BOP) can earn time credits that reduce their time in prison. Under that statute, the BOP *must* transfer eligible people from its prisons to home confinement or residential reentry centers (commonly called halfway houses) when the time credits they have earned equal the remaining time on their sentences. The statute is clear: time credits "*shall be applied* toward time in prerelease custody or supervised release," and the BOP "*shall transfer* eligible prisoners . . . into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added).

But the BOP has unlawfully treated this statutory program as discretionary, promulgating regulations that directly conflict with the plain language of the First Step Act. The regulations impermissibly and inexplicably substitute "may" for "shall," providing that "the Bureau *may apply* FSA Time Credits toward prerelease custody or supervised release." 28 C.F.R. § 523.44(a)(1) (emphasis added); *see also id.* §§ 523.44(c), (d).

This difference is not academic—it affects real people, every day. For thousands of people, the BOP's unlawful regulation has already resulted in additional time in prison beyond what the law allows. And it will continue to affect thousands more every year. Here, the named plaintiffs and members of the class they seek to represent will be held in prison for months after they have a clear statutory right to be transferred out.

Plaintiffs ask this Court to restore the statutory scheme Congress enacted by vacating the unlawful regulation and ordering the BOP to transfer eligible people from its prisons into prerelease custody or supervised release as directed by the First Step Act.

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 702–704. The Court has remedial authority pursuant to 5 U.S.C. §§ 702, 706; 28 U.S.C. §§ 2201-02; and the inherent equitable powers of this Court.

2. Venue is proper in this District pursuant to 5 U.S.C. § 703 and 28 U.S.C. §§ 1391(e)(1)(A), (B), because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

3. Plaintiff Vanessa Crowe is a 50-year-old mother and grandmother who is serving a federal criminal sentence at FCI Marianna in Florida for aiding and abetting possession with intent to distribute methamphetamine. She has been serving this sentence for nearly 10 years and is eligible to earn time credits under the First Step Act. The BOP has continuously classified her recidivism risk as low since December 2018. On December 24, 2024, her earned time credits will be equal to the remainder of her sentence. Although she will meet all the prerequisites under the First Step Act to be transferred out of prison on that date, the BOP has expressed its intent to continue imprisoning Ms. Crowe until May 7, 2025.

4. Plaintiff Glen Galemmo is a 59-year-old father and grandfather who is serving a federal criminal sentence at FCI Williamsburg in South Carolina for wire fraud and money laundering. He has been serving this sentence for over 10 years and is eligible to earn time credits under the First Step Act. The BOP has continuously classified his recidivism risk as minimum since December 2018. On February 26, 2025, his earned time credits will be equal to the remainder of his sentence. Although he will meet all the prerequisites under the First Step Act to be transferred out of prison on that date, the BOP has expressed its intent to continue imprisoning Mr. Galemmo until May 22, 2025.

5. Defendant Federal Bureau of Prisons is a federal agency headquartered in the District of Columbia. The BOP is responsible for administering the execution of federal criminal sentences and for implementing the earned time credit program established in the First Step Act. It promulgated the regulation at issue here: Application of FSA Time Credits, 28 C.F.R. § 523.44 (2022).

6. Defendant Colette Peters is the Director of the Bureau of Prisons and is sued in her official capacity. As Director, Defendant Peters oversees the operations of the BOP, including implementation of the earned time credit program established in the First Step Act.

## BACKGROUND

### I. Statutory and Regulatory Framework

#### A. The Statute

7. Six years ago, significant bipartisan majorities in Congress passed—and President Trump signed—the First Step Act, a comprehensive legislative effort to "allow prisons to help criminals transform their lives . . . so that we are not perpetuating the cycle of crime that continues to plague communities across the country . . . ." 164 Cong. Rec. S7639, S7642 (Dec. 17, 2018) (statement of Sen. Cornyn).

8. A centerpiece of the First Step Act is a system of earned time credits that incentivizes eligible people incarcerated in federal prisons to participate in programs designed to reduce recidivism. *See* First Step Act of 2018, Pub. L. No. 115-391, § 101, 132 Stat. 5194, 5196-5208 (2018).[1]

---

[1] The First Step Act is codified in many scattered sections of the United States Code. The relevant provisions are filed as Exhibit A to this complaint.

9. People who have been convicted of homicide, terrorism-related offenses, threats to public officials, and numerous other federal offenses are not eligible to earn credits. 18 U.S.C. § 3632(d)(4)(D).

10. The First Step Act provides that an eligible person who "successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits." *Id.* § 3632(4)(A).

11. The First Step Act further provides that time credits "shall" be earned as follows:

   a. First, a "prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." *Id.* § 3632(d)(4)(A)(i).

   b. Second, a "prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." *Id.* § 3632(d)(4)(A)(ii).

12. The purpose of the earned time credit program is to give incarcerated people an incentive to participate in recidivism-reducing programming and productive activities. The incentive is that these credits will eventually reduce their time spent in prison.

13. The First Step Act's system of "earn[ed] time credits" is not entrusted to the discretion of the BOP: an eligible person "who successfully completes evidence-based recidivism reduction programming or productive activities, *shall* earn time credits." *Id.* § 3632(d)(4)(A) (emphasis added); *see also id*. § 3632(d)(6) ("The incentives described in this subsection *shall* be in addition

to any other rewards or incentives for which a prisoner may be eligible.") (emphasis added).[2] As the law clearly indicates, each time credit is equal to one day of imprisonment. *Id.* § 3632(d)(4)(A)(i) ("shall earn 10 days of time credits").

14. Application of earned time credits is also not entrusted to the discretion of the BOP: the First Step Act provides that "[t]ime credits earned . . . by prisoners who successfully participate in recidivism reduction programs . . . *shall be applied* toward time in prerelease custody or supervised release." *Id.* § 3632(d)(4)(C) (emphasis added).

15. Earned time credits can be used in three ways, each of which results in early release from incarceration:

   a. First, if a person's sentence includes a term of supervised release, the BOP can apply up to 365 time credits to begin the person's supervised release up to 12 months early. 18 U.S.C. § 3624(g)(3). Supervised release is a form of supervision that occurs after a person's prison sentence is over. Thus, applying 365 credits towards early transfer to supervised release is the equivalent of taking one year off a person's prison sentence.

   b. Second, time credits may be applied toward placement in home confinement. *Id.* § 3624(g)(2)(A). Home confinement is referred to in the statute as one form of "prerelease custody." *Id.* § 3624(g)(2).

   c. Third, time credits may be applied toward placement in a residential reentry center, commonly referred to as a halfway house. *Id.* § 3624(g)(2)(B). Placement in a

---

[2] Although they sound similar, "earned time credits" are different from "good time credits." Good time credits pre-date the First Step Act. The First Step Act amended the good time credit system and created the earned time credit system. This complaint concerns only the earned time credit system.

5

    residential reentry center is also referred to in the statute as a form of "prerelease custody." *Id.* § 3624(g)(2).

16. While the law does not give the BOP discretion over whether to apply time credits in the first place, the statute does allow it some discretion in deciding among the release options. For example, the BOP may apply up to 365 earned time credits towards early supervised release, but it is not required to do so. *Id.* § 3624(g)(3). Whether the BOP applies a person's time credits toward early supervised release does not change whether the person is entitled to the credits they have earned. If the credits are not used toward supervised release, they must be used toward prerelease custody.

17. Upon information and belief, the BOP is generally applying the maximum amount of earned time credits toward supervised release that the First Step Act allows. This means that in practice, the first 365 days of earned time credits go towards early placement on supervised release. When people earn more than 365 credits, the BOP must apply those time credits toward prerelease custody—placement in a halfway house or in home confinement. *See id.* § 3624(g)(3) (early supervised release is "not to exceed 12 months"). Unlike for supervised release, the statute does not limit the number of credits a person can earn toward prerelease custody.

18. The First Step Act explicitly provides that BOP "*shall transfer* eligible prisoners . . . into prerelease custody or supervised release," 18 U.S.C. § 3632(d)(4)(C) (emphasis added), when certain conditions are met:

a. First, a person has earned a sufficient number of time credits. The First Step Act defines an "eligible prisoner" for prerelease custody or supervised release as a person who has "earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment[.]" 18 U.S.C. § 3624(g)(1)(A).

b. Second, a person "has shown," based on periodic risk reassessments administered by the BOP, "a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment[.]" *Id.* § 3624(g)(1)(B).

    c. Third, a person "has had the remainder of [their] imposed term of imprisonment computed under applicable law[.]" *Id.* § 3624(g)(1)(C).[3]

    d. Fourth, for a person to be placed in prerelease custody, the person must have been "determined . . . to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner" or alternatively have had a "petition to be transferred to prerelease custody or supervised release approved by the warden of the prison" following a determination that the person "would not be a danger to society if transferred," that the person has "made a good faith effort to lower their recidivism risk," and that the "prisoner is unlikely to recidivate[.]" *Id.* § 3624(g)(1)(D).

19. As explained above, the BOP has the option to place eligible people in two types of prerelease custody: home confinement or a halfway house. The First Step Act instructs that the "Director of the Bureau of Prisons *shall ensure* there is sufficient prerelease custody capacity to accommodate *all eligible prisoners*." *Id.* § 3624(g)(11) (emphasis added).

20. This unqualified, mandatory language is unique to prerelease custody under the First Step Act's earned time credit system. Prior to the First Step Act, Congress granted the BOP some discretion when transferring people to prerelease custody, providing that "[t]he Director of the

---

[3] "Computation of sentence" is a process the BOP undertakes according to the Sentence Computation Manual. *See* U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5880.28, Section 3 Computation of Sentence at 1–5 (1992) https://www.bop.gov/policy/progstat/5880_028.pdf.

7

Bureau of Prisons shall, *to the extent practicable*, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." *Id.* § 3624(c)(1) (emphasis added).

21. Under that directive, which still exists as a separate authority for the BOP to move people out of prisons when earned time credits are not at issue, the BOP has discretion to determine whether transfer to a "community correctional facility" (another statutory term used to refer to a halfway house) or similar prerelease custody setting is "practicable." *Id.* Upon information and belief, BOP has considered a lack of bed space in the community facility as making transfer under § 3624(c)(1) impracticable. Similarly, when acting under that pre-First Step Act directive, the BOP has discretion to determine when to transfer someone, so long as the person has 12 months or less of their sentence remaining. *Id.*

22. The First Step Act's earned time credit system is separate from and in addition to this prior directive and does not allow for any such discretion. The First Step Act does not include language permitting the BOP to comply with its prerelease requirements only "to the extent practicable." To the contrary, the First Step Act provides that the BOP "*shall ensure* there is sufficient prerelease custody capacity to accommodate *all* eligible prisoners" and that such prisoners "*shall [be] transfer[red]*." 18 U.S.C. §§ 3624(g)(11), 3632(d)(4)(C) (emphasis added).

## B.  The Regulation

23. In 2022, more than three years after the First Step Act's enactment, the BOP adopted new regulations purporting to implement the statute's system of earned time credits. *See* 28 C.F.R. § 523.44. This regulation conflicts with the First Step Act's text by treating the application of earned time credits as permissive rather than mandatory.

24. Whereas the First Step Act provides that any earned time credits "shall be applied" toward time in prerelease custody or supervised release where certain conditions are met, 18 U.S.C. § 3632(d)(4)(C), the BOP's regulation provides that the BOP "*may* apply FSA Time Credits toward prerelease custody or supervised release" where certain conditions are met, 28 C.F.R. § 523.44(a)(1) (emphasis added); *see also id.* § 523.44(c)–(d).

25. The BOP's practice is consistent with its regulations. The BOP has taken the position in litigation, and the BOP's employees have stated in fact declarations, that the BOP has discretion over whether and when to apply earned time credits. *See, e.g.,* Sur-reply to Pet'r's Reply in Supp. of Writ of Habeas Corpus Pursuant to § 28 U.S.C. 2241 at 7, *Gattis v. Jacquez*, No. 3:23-cv-00301 (D. Ore. Oct. 2, 2023), ECF No. 23 (asserting that "[t]he FSA thus merely accelerates when an inmate may be considered for prerelease custody, but the FSA does not strip BOP's discretion to make that decision."); Decl. of Alisha Gallagher at 3, *Mercedes-Valdez v. Warden*, No. 1:23-cv-04079, (D.N.J. Sept. 25, 2023), ECF No. 5-1 (Senior Consolidated Legal Center Attorney employed by BOP stating "Petitioner is also now eligible to have his remaining 340 days of earned time credits applied toward prerelease custody. . . . Petitioner's placement in a pre-release community placement is ultimately subject to resource availability and the consent of a residential reentry center. . . ."). Neither of those courts reached the issue of whether the BOP's position was correct.

### III. BOP Is Imprisoning People Longer than the Law Allows

26. Defendants are failing to administer the First Step Act according to the unambiguous statutory requirements. This failure results directly in people spending more time in prison than the First Step Act allows.

9

27. Plaintiff Vanessa Crowe has been incarcerated for nearly 10 years. The BOP's own records reflect that she will have earned enough credits to be moved out of prison and into prerelease custody on December 24, 2024. But the BOP intends to incarcerate Ms. Crowe until May 7, 2025.

28. Plaintiff Glen Galemmo has spent over 10 years in prison. The BOP's own records reflect that he will have earned enough credits to be moved out of prison and into prerelease custody on February 26, 2025. But BOP intends to incarcerate Mr. Galemmo until May 22, 2025.

29. In addition to Plaintiffs Crowe and Galemmo, other proposed class members are experiencing similar harms. For example:

   a. Richard Rudisill is 66 years old and has been incarcerated for over 23 years. He is currently incarcerated at FCI Petersburg in Virginia. He was convicted of conspiracy to possess with intent to distribute cocaine and sentenced to 360 months. The BOP has continuously classified his risk recidivism level as low since December 2018. The BOP's own records reflect that as of March 30, 2024, he had earned 415 credits towards prerelease custody. Upon information and belief, as of November 30, 2024, he had earned 535 days towards prerelease custody and had only 435 days left on his sentence. He is currently over-detained and has lost over 100 days in prerelease custody. Upon information and belief, the BOP intends to continue incarcerating Mr. Rudisill until April 3, 2025.

   b. Danyell Roberts is 51 years old and has spent over six years in prison. She is currently incarcerated at FCI Marianna in Florida. She was convicted of possession with intent to distribute cocaine and sentenced to 121 months. The BOP has continuously classified her risk recidivism level as minimum since January 2019. Upon information and belief, BOP's own records reflect that as of November 21, 2024, Ms. Roberts had earned

10

enough credits to be moved out of prison and into prerelease custody. But Ms. Roberts is still incarcerated and, upon information and belief, the BOP intends to continue incarcerating Ms. Roberts until March 19, 2025.

c. Richard Armbre Williams is 53 years old and has been incarcerated for over 10 years. He is currently incarcerated at FCI Williamsburg in South Carolina. He was convicted of being a felon in possession of a firearm and ammunition and sentenced to 180 months. The BOP has continuously classified his recidivism risk as low since December 2018. The BOP's own records reflect that as of September 5, 2024, he had earned 625 credits towards prerelease custody and only had 406 days left on his sentence. He is currently over-detained and has lost over 200 days in prerelease custody.

d. Jamie Sigmon is 37 years old and has spent over five years in prison. She is currently incarcerated at FCI Pekin in Illinois. She was convicted of conspiracy to distribute and possession with intent to distribute methamphetamine and sentenced to 114 months. The BOP classified her risk recidivism level as low from November 2019 until May 2023 and as minimum since May 2023. The BOP's own records reflect that Ms. Sigmon will have earned enough credits to be moved out of prison and into prerelease custody on January 6, 2025. Upon information and belief, the BOP intends to continue incarcerating Ms. Sigmon until March 21, 2025.

e. Kay Gow is 74 years old and has spent over five years in prison. She is currently incarcerated at FCI Marianna in Florida. She was convicted of conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, and illegal monetary transactions, and sentenced to 120 months. The BOP has continuously classified her

risk recidivism level as minimum since June 2019. The BOP's own records reflect that Ms. Gow will have earned enough credits to be moved out of prison and into prerelease custody on March 27, 2025. But the BOP has expressed its intent to incarcerate Ms. Gow until September 9, 2025.

30. Every day of imprisonment past the date on which a person is required to be moved to prerelease custody causes serious harm. Spending time in prison is meaningfully different from spending time in a halfway house or on home confinement. For example:

   a. People in halfway houses are generally required to work full-time jobs and are permitted to leave for additional activities including visiting, counseling, and recreation. As a result, they are out in the community on a regular basis experiencing a degree of liberty that is materially different from life in prison.

   b. For people in home confinement, the contrast with prison is even greater because they are permitted to live with, help care for, and reintegrate into their families' day-to-day lives.

31. Defendants' failure to implement Congress's clear, mandatory directive in the First Step Act to move Plaintiffs and proposed class members out of prison and into the community when they have earned credits equal to the time remaining on their sentences is a violation of law. The BOP's regulation, 28 C.F.R. § 523.44, is contrary to statutory authority.

## CLASS ALLEGATIONS

32. Pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs seek to represent a class of all incarcerated people who have earned or will earn time credits under the First Step Act, who meet or will meet the prerequisites for prerelease custody in 18 U.S.C. § 3624(g)(1), and who have not been or will

not be transferred to prerelease custody on or before the date when their time credits equal their remaining sentences.

33. Plaintiffs reserve the right to amend or modify the class definition or to propose sub-classes as appropriate if discovery or further investigation reveals that the class should be expanded or otherwise modified.

34. The class meets the prerequisites of Fed. R. Civ. P. 23(a).

35. Numerosity (Rule 23(a)(1)): The class is so numerous that joinder is impracticable because of the very large number of putative class members.

   a. While the precise size of the class is unknown, the Department of Justice reported that as of January 2024, over 87,000 people in the BOP's custody were eligible to earn time credits under the First Step Act based on their crime of conviction; over 47,000 of those people had a low or minimum risk of recidivism, which people generally have to maintain over time to be eligible to apply their earned time credits towards prerelease custody.[4]

   b. Thousands of these 47,000 people will earn credits equal to the time remaining on their sentences within the foreseeable future, and Defendants will not transfer them to supervised release or prerelease custody at or before that time because of the discretionary wording of the BOP's regulation and because Defendants treat the requirement to transfer people to prerelease custody under the First Step Act as permissive.

---

[4] U.S. Dep't of Just., *First Step Act Annual Report* 19 (2024), https://www.ojp.gov/pdffiles1/nij/309223.pdf.

13

    c.    While giving sworn testimony to the House Judiciary Committee, Defendant Peters was recently asked if it is accurate that more than 60,000 FSA-eligible people are facing 3–12-month delays in transfer to FSA prerelease or full release to freedom. She responded: "I'd want to confirm with my team on the accuracy of those numbers but anecdotally that is what I'm hearing."[5]

36.    Commonality (Rule 23(a)(2)): The claims of the class members share common issues of fact and law, including but not limited to: (1) Whether the BOP is violating the First Step Act by failing to move class members out of prison no later than the date upon which their earned time credits are equal to the remainder of their sentence; (2) Whether the BOP regulation entitled Application of FSA Time Credits, 28 C.F.R. § 523.44 is a final agency action; (3) Whether the regulation is not in accordance with the First Step Act and is in excess of statutory authority in violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A), (2)(C).

37.    Typicality (Rule 23(a)(3)): The claims of named Plaintiffs are typical of the class members' claims: they are incarcerated and statutorily eligible to earn First Step Act time credits, they will meet the prerequisites for prerelease custody in 18 U.S.C. § 3624(g)(1), and the BOP will not transfer them to prerelease custody by the date on which their credits will be equal to their remaining sentences.

38.    Adequacy (Rule 23(a)(4)): Plaintiffs are adequate class representatives who meet all of the requirements of Rule 23(a)(4). They have no conflict of interest with other class members, they will fairly and adequately protect the interests of the class, and they understand and accept their responsibilities as class representatives.

---

[5] *See Oversight of the Federal Bureau of Prisons Before the Subcomm. on Crime and Fed. Gov't Surveillance of the H. Comm. on the Judiciary*, 118th Cong. at 2:05:34 (2024), (Testimony of Colette Peters, Director, BOP), https://www.youtube.com/watch?v=fqwvjvDaWPY&t=7s.

39. Defendants have acted, and will act, on grounds generally applicable to the class, thereby making final injunctive or declaratory relief appropriate to the class as a whole. The class may therefore properly be certified under Fed. R. Civ. P. 23(b)(2).

40. Counsel for Plaintiffs are qualified to be certified as class counsel. They have experience litigating class actions and cases involving civil rights generally, and the rights of incarcerated people and those otherwise involved in the criminal system specifically.

## CLAIMS FOR RELIEF

### *First Claim for Relief*
### Violation of the Administrative Procedure Act, 5 U.S.C. § 706

*By All Plaintiffs, On Behalf of Themselves and All Others Similarly Situated, Against All Defendants*

41. The First Step Act directs that BOP "shall" award earned time credits to eligible incarcerated people who participate in qualifying programs, 18 U.S.C. § 3632(d)(4)(A); that BOP "shall" provide earned time credits in addition to any other incentives for which people are eligible, 18 U.S.C. § 3632(d)(6); and that BOP "shall" move people who meet certain qualifications into prerelease custody when their credits are equal to the time remaining on their sentences, 18 U.S.C. § 3624(g)(1)(A)–(C).

42. BOP's regulation, Application of FSA Time Credits, 28 C.F.R. § 523.44, provides that BOP "may" give people the benefit of their earned time credits by moving them out of prison when they have earned sufficient credits. That regulation is contrary to the provisions of the First Step Act.

43. Defendants are systematically failing to ensure that eligible people, including Plaintiffs Crowe, Galemmo, and all those similarly situated, receive the full benefit of their earned time credits.

44. As a result, Plaintiffs Crowe, Galemmo, and all those similarly situated will spend more time in prison than the First Step Act permits.

45. As a result of Defendants' actions, Plaintiffs and putative class members face the irreparable harm of unlawful over-detention.

46. The promulgation of the BOP regulation, Application of FSA Time Credits, 28 C.F.R. § 523.44, is a final agency action that is not in accordance with law and is in excess of statutory authority, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), § 706(2)(C).

## Second Claim for Relief
### First Step Act, via inherent equitable power

*By All Plaintiffs, On Behalf of Themselves and All Others Similarly Situated, Against All Defendants*

47. The First Step Act requires that people who are incarcerated in the custody of the BOP and who have earned time credits and satisfied other prerequisites must be transferred to prerelease custody or supervised release no later than the date on which their earned time credits are equal to the time remaining on their sentences. 18 U.S.C. §§ 3624(g)(1)(A)–(C), 3632(d)(4)(C).

48. Plaintiff Crowe's earned time credits will be equal to the remainder of her sentence as of December 24, 2024. Plaintiff Galemmo's earned time credits will be equal to the remainder of his sentence as of February 26, 2025. Defendants intend to imprison Plaintiffs until May 2025, months longer than the First Step Act allows.

49. Defendants are systematically failing to ensure that Plaintiffs and all those similarly situated will be transferred to supervised release or prerelease custody within the time required by the First Step Act.

50. As a result of Defendants' actions, Plaintiffs and putative class members face the irreparable harm of unlawful incarceration.

51. Defendants' systemic violations of the First Step Act, carried out under color of law, may be enjoined under this Court's equitable power. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Certify the proposed class under Fed. R. Civ. P. 23(b)(2), and appoint the named Plaintiffs as class representatives and the undersigned counsel as class counsel;

B. Declare that Defendants' administration of the earned time credit program violates the First Step Act;

C. Vacate and set aside 28 C.F.R. § 523.44, Application of FSA Time Credits, pursuant to 5 U.S.C. §§ 706(2)(A), (C);

D. Enter injunctive relief ordering Defendants to ensure, consistent with the First Step Act, that Plaintiffs and class members are transferred to supervised release or to prerelease custody no later than the date upon which their earned time credits are equal to the remainder of their sentence;

E. Award Plaintiffs their costs and reasonable attorneys' fees pursuant to 28 U.S.C. § 2412 and 5 U.S.C. § 504 *et seq.*, and any other applicable source of law; and

F. Award such further relief as the Court deems appropriate.

[signatures on following page]

Dated: December 20, 2024

Respectfully submitted,

/s/ *Elizabeth Henthorne*
Elizabeth Henthorne (D.C. Bar No. 1562688)
JENNER & BLOCK LLP
1099 New York Ave. NW, Ste. 900
Washington, DC 20001
(202) 637-6367
bhenthorne@jenner.com

Emma A. Andersson* (CA Bar No. 260637)
Julian Clark* (NY Bar No. 5824180)
American Civil Liberties Union Foundation
125 Broad St. – 17th Floor
New York, NY 10004
(929) 969-4365
eandersson@aclu.org
jclark@aclu.org

*Application for admission pro hac vice forthcoming.*

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Aditi Shah**
American Civil Liberties Union Foundation
of the District of Columbia
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org
ashah@acludc.org

***Application for admission pro hac vice forthcoming; not admitted in DC; practice limited to matters before federal courts and District of Columbia agencies.*

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 20th day of December, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                By: /s/ *Elizabeth Henthorne*
                                                         Elizabeth Henthorne