# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Vanessa CROWE and Glen GALEMMO,
*individually and on behalf of all others*
*similarly situated*

       *Plaintiffs*,

    v.

FEDERAL BUREAU OF PRISONS, *et al.*,

       *Defendants*.

No. 1:24-cv-3582 (APM)

## MOTION FOR A PRELIMINARY INJUNCTION
## AND FOR PROVISIONAL CLASS CERTIFICATION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

LEGAL AND FACTUAL BACKGROUND .................................................................... 2

    I.      The First Step Act's Earned Time Credits System ................................... 2

    II.     The BOP's Practice And Regulation Regarding Earned Time Credits ................. 5

    III.   The Harms To Plaintiffs And Their Families Caused By The BOP's Failure To Obey The Law ..................................................................................................... 9

ARGUMENT .................................................................................................................... 12

    I.      Plaintiffs Are Likely To Succeed On The Merits Of Their Claims. ................... 13

          A.     Plaintiffs are likely to succeed on the merits of their claim that the BOP is violating the First Step Act. ......................................................... 13

               1.     The First Step Act requires the BOP to move people to prerelease custody when their earned time credits equal the remainder of their sentences. ............................................. 13

               2.     This Court has inherent equitable power to enjoin the BOP from violating the First Step Act. ...................................... 16

               3.     Alternatively, the Court can compel the BOP to transfer eligible people within the time required by the First Step Act pursuant to the Administrative Procedure Act. .......... 20

          B.     Plaintiffs Are Likely To Succeed On Their Claim That The BOP's Regulation Should Be Set Aside Under The Administrative Procedure Act. ....................................................................................................... 23

    II.     Plaintiffs And Putative Class Members Have Demonstrated Irreparable Harm. ..25

    III.   The Public Interest And Balance Of Equities Favor Injunctive Relief................ 28

    IV.   Provisional Class Certification For Preliminary Injunction Purposes Is Warranted .............................................................................................................. 30

CONCLUSION ................................................................................................................. 32

# TABLE OF AUTHORITIES

## CASES

*[Redacted] v. Fed. Bureau of Prisons*,
    2023 WL 9530181 (S.D.N.Y. Dec. 28, 2023) ......................................................................... 15

*Adams v. District of Columbia*,
    285 F. Supp. 3d 381 (D.D.C. 2018) ...................................................................................... 13

*Afghan & Iraqi Allies v. Blinken*,
    103 F.4th 807, (D.C. Cir. 2024), ......................................................................................... 20

*Allina Health Servs. v. Sebelius*,
    746 F.3d 1102 (D.C. Cir. 2014) ........................................................................................... 25

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*,
    121 F.4th 1314 (D.C. Cir. 2024) ......................................................................................... 12

*Am. Bar Ass'n v. F.T.C.*,
    430 F.3d 457 (D.C. Cir. 2005) ............................................................................................. 25

*American School of Magnetic Healing v. McAnnulty*,
    187 U.S. 94 (1902) .............................................................................................................. 17

*Anglers Conservation Network v. Pritzker*,
    809 F.3d 664 (D.C. Cir. 2016) ............................................................................................. 14

*Armstrong v. Exceptional Child Ctr., Inc.*,*
    575 U.S. 320 (2015) ............................................................................... 16, 17, 18, 19

*Brennan v. Cunningham*,
    813 F.2d 1 (1st Cir. 1987) ................................................................................................... 27

*Bridgeport Hosp. v. Becerra*,
    108 F.4th 882 (D.C. Cir. 2024) ........................................................................................... 14

*Briones-Pereyra v. Warden*,
    2024 WL 4171380 (E.D. Cal. Sept. 12, 2024) ..................................................................... 18

*Carroll v. Safford*,
    44 U.S. . 441 (1845) ....................................................................................................... 16, 17

*Changji Esquel Textile Co. Ltd. v. Raimondo*,
    40 F.4th 716 (D.C. Cir. 2022) ............................................................................................. 12

*Charles H. v. District of Columbia*,
    2021 WL 2946127 (D.D.C. June 16, 2021) ......................................................................... 30

*Cobell v. Norton,*
240 F.3d 1081 (D.C. Cir. 2001) ........................................................................ 21

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
603 U.S. 799 (2024) ............................................................................... 21, 24

*Crown Castle Fiber, L.L.C. v. City of Pasadena,*
76 F.4th 425 (5th Cir. 2023) ............................................................................ 17

*Damus v. Nielsen,*
313 F. Supp. 3d 317 (D.D.C. 2018) ........................................................... 12, 30, 31

*Davis v. Gray,*
16 Wall. 203 (1873) ........................................................................................ 17

*Diaz v. Brewer,*
656 F.3d 1008 (9th Cir. 2011) .......................................................................... 32

*Doctor's Assocs., Inc. v. Stuart,*
85 F.3d 975 (2d Cir. 1996) .............................................................................. 32

*DSE, Inc. v. United States,*
169 F.3d 21 (D.C. Cir. 1999) ........................................................................... 32

*E.E.O.C. v. Lutheran Soc. Servs.,*
186 F.3d 959 (D.C. Cir. 1999) .......................................................................... 24

*Environmental Health Trust v. F.C.C.,*
9 F.4th 893 (D.C. Cir. 2021) ........................................................................... 24

*Ex parte Young,*
209 U.S. 123 (1908) ....................................................................................... 17

*Forest Guardians v. Babbitt,*
174 F.3d 1178 (10th Cir. 1999) ........................................................................ 20

*Guerriero v. Miami RRM,*
2024 WL 2017730 (11th Cir. 2024) .................................................................... 16

*Hanson v. District of Columbia,*
120 F.4th 223 (D.C. Cir. 2024) ......................................................................... 26

*Hi-Tech Pharmacal Co., Inc. v. FDA,*
587 F. Supp. 2d 1 (D.D.C. 2008) ....................................................................... 21

*In re Nat'l Nurses United,*
47 F.4th 746 (D.C. Cir. 2022) .......................................................................... 14

iii

*Jacksonville Port Auth. v. Adams*,
    556 F.2d 52 (D.C. Cir. 1977) ..................................................................... 29

*Kiakombua v. Wolf*,
    498 F. Supp. 3d 1 (D.D.C. 2020) .............................................................. 25

*Kingdomware Techs., Inc. v. United States*,
    579 U.S. 162 (2016) ........................................................................... 13, 14

*Kirwa v. United States Dep't of Def.*,
    285 F. Supp. 3d 21 (D.D.C. 2017) ......................................................... 20, 31

*League of Women Voters v. Newby*,*
    838 F.3d 1 (D.C. Cir. 2016) ................................................................... 28, 29

*Lewis v. U.S. Parole Comm'n*,*
    2024 WL 3566135 (D.D.C. July 29, 2024) .............................................. 21, 23

*Lujan v. National Wildlife Federation*,
    497 U.S. 871 (1990) ................................................................................. 23

*Me. Cmty. Health Options v. United States*,*
    590 U.S. 296 (2020) ........................................................................... 13, 15

*Mathis v. U.S. Parole Comm'n*,*
    2024 WL 4056568 (D.D.C. Sept. 5, 2024) .............................................. 17, 19

*McQuiggin v. Perkins*,
    569 U.S. 383 (2013) ................................................................................. 17

*NextEra Energy Res., LLC v. FERC*,
    118 F.4th 361 (D.C. Cir. 2024) ................................................................. 15

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ......................................................................... 20, 22, 23

*Osborn v. Bank of United States*,
    9 Wheat. 738 (1824) ................................................................................ 17

*Porter v. Warner Holding Co.*,
    328 U.S. 395, (1946) ................................................................................ 17

*Pursuing Am.'s Greatness v. FEC*,
    831 F.3d 500 (D.C. Cir. 2016) ................................................................. 28, 29

*R.I.L.-R. v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) ........................................................... 29, 31

*Ramirez v. Phillips,*
  2023 WL 8878993 (E.D. Cal. Dec. 22, 2023) ........................................... 26

*Ramirez v. U.S. Immigr. & Customs Enf't,*
  310 F. Supp. 3d 7 (D.D.C. 2018) ........................................... 23, 26, 27

*Seminole Tribe of Fla. v. Fla.,*
  517 U.S. 44 (1996) ........................................... 19

*Seneca v. Price,*
  257 F. Supp. 3d 95 (D.D.C. 2017) ........................................... 22

*Seretse–Khama v. Ashcroft,*
  215 F. Supp. 2d 37 (D.D.C. 2002) ........................................... 26

*Sichting v. Rardin,*
  2024 WL 4785007 (D. Minn. Nov. 14, 2024) ........................................... 15

*Sierra Club v. Thomas,*
  828 F.2d 783 (D.C. Cir. 1987) ........................................... 21

*Singh v. Berger,*
  56 F.4th 88 (D.C. Cir. 2022) ........................................... 28

*Telecommunications Rsch. & Action Ctr. v. F.C.C.,*
  750 F.2d 70 (D.C. Cir. 1984), ........................................... 20

*Truck Trailer Manufacturers Ass'n, Inc v. E.P.A.,*
  17 F.4th 1198 (D.C. Cir. 2021) ........................................... 25

*Verizon Md., Inc. v. Pub. Serv. Comm'n,*
  535 U.S. 635 (2002) ........................................... 19

*Washington v. Reno,*
  35 F.3d 1093 (6th Cir. 1994) ........................................... 29

*Woodley v. Warden, USP Leavenworth,*
  2024 WL 2260904 (D. Kan. May 15, 2024) ........................................... 15, 20

## STATUTES

18 U.S.C. § 3621(b)(5) ........................................... 18

18 U.S.C. § 3621(h) ........................................... 25

18 U.S.C. § 3624(c)(1) ........................................... 14

18 U.S.C. § 3624(g)(1)(A)* ........................................... 3, 5, 13, 15, 23

18 U.S.C. § 3624(g)(1)(B) ............................................................................... 3

18 U.S.C. § 3624(g)(1)(C) ............................................................................... 3

18 U.S.C. § 3624(g)(1)(D)(i) ........................................................................... 4

18 U.S.C. § 3624(g)(1)(D)(ii) .......................................................................... 4

18 U.S.C. § 3624(g)(11) ............................................................................ 5, 14

18 U.S.C. § 3624(g)(2) .............................................................................. 4, 14

18 U.S.C. § 3624(g)(2)(A) ............................................................................. 4

18 U.S.C. § 3624(g)(2)(A)(i) ......................................................................... 27

18 U.S.C. § 3624(g)(2)(B) ............................................................................. 4

18 U.S.C. § 3624(g)(3) ...................................................................... 4, 14, 16

18 U.S.C. § 3625 ...................................................................................... 22, 24

18 U.S.C. § 3632(d) ....................................................................................... 2

18 U.S.C. § 3632(d)(4)(A) ......................................................................... 2, 3

18 U.S.C. § 3632(d)(4)(C)* .......................... 1, 3, 4, 5, 8, 13, 15, 20, 21, 22, 24, 25

18 U.S.C. § 3632(d)(4)(D) ............................................................................. 2

18 U.S.C. §§ 3621(b)(1)–(5) ....................................................................... 18

18 U.S.C. §§ 3632(a), (b) ............................................................................ 25

18 U.S.C. §§ 3632(d)(4)(A)(i)–(ii) ............................................................... 3

5 U.S.C. § 701(a)(1) ............................................................................... 20, 22

5 U.S.C. § 701(a)(2) ........................................................................... 20, 22, 24

5 U.S.C. § 704 ..................................................................................... 20, 22, 24

5 U.S.C. § 706 .............................................................................................. 13

5 U.S.C. § 706(1) ........................................................................... 19, 20, 23

5 U.S.C. §§ 706(2)(A), 706(2)(C) ............................................................... 23

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5196–5208 (2018) ................ 17, 29

## OTHER AUTHORITIES

164 Cong. Rec. 7642 (2018) (statement of Sen. Cornyn)................................................................. 2

164 Cong. Rec. 7745 (2018) (statement of Sen. Blumenthal) ....................................................... 16

164 Cong. Rec. 7746 (2018) (statement of Sen. Blumenthal) ....................................................... 16

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS
(2012) ........................................................................................................................................... 14

BOP, *About Our Facilities*,
https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp#:~:text=The
%20BOP%20contracts%20with%20residential,activities%20during%20this%20readjustment
%20phase (last accessed Jan. 12, 2025).................................................................................... 27

BOP, *First Step Act – Frequently Asked Questions*,
https://www.bop.gov/inmates/fsa/faq.jsp#fsa_time_credits (last accessed Jan. 13, 2025)......... 8

BOP, Program Statement 5410.01 CN-2, *First Step Act of 2018 – Time Credits: Procedures for
Implementation of 18 U.S.C. § 3632(d)(4)* (Mar. 10, 2023),
https://www.bop.gov/policy/progstat/5410.01_cn2.pdf........................................................ 4, 9

L. Jaffe, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION (1965) ................................................. 17

*Oversight of the Federal Bureau of Prisons Before the Subcomm. on Crime and Fed. Gov't
Surveillance of the H. Comm. on the Judiciary*, 118th Cong. (July 23, 2024) (Testimony of
Colette Peters, Director, BOP), https://www.youtube.com/watch?v=fqwvjvDaWPY&t=7s (last
accessed Dec. 18, 2024) ............................................................................................................. 7

Senator Cory A. Booker, CARES Act Home Confinement Three Years Later, June 2023,
https://www.booker.senate.gov/imo/media/doc/cares_act_home_confinement_policy_brief1.p
df.................................................................................................................................................. 30

Sur-reply to Pet'r's Reply in Supp. of Writ of Habeas Corpus Pursuant to  28 U.S.C. § 2241,
*Gattis v. Jacquez*, No. 3:23-cv-00301 (D. Ore. Oct. 2, 2023)...................................................... 8

U.S. DEP'T OF JUST., *First Step Act Annual Report* (2024) .......................................................... 7

## Rules

Fed. R. Civ. P. 23(a)(1)................................................................................................................. 31

Fed. R. Civ. P. 23(a)(2)................................................................................................................. 31

Fed. R. Civ. P. 23(a)(3)................................................................................................................. 31

Fed. R. Civ. P. 23(a)(4)................................................................................................................. 31

Fed. R. Civ. P. 23(b)(2)........................................................................................ 31

Fed. R. Civ. P. 65(c) .......................................................................................... 32

**Regulations**

28 C.F.R. § 523.44 ...................................................................................... 8, 13, 24

28 C.F.R. § 523.44(a)(1) ........................................................................................ 2, 8

28 C.F.R. § 523.44(c)–(d) ....................................................................................... 8

Pursuant to Federal Rules of Civil Procedure 23 and 65, Plaintiffs Vanessa Crowe and Glen Galemmo move for a preliminary injunction on behalf of themselves and a class of similarly situated federal prisoners who have not been or will not be moved to prerelease custody within the time required by the First Step Act.[1]

### INTRODUCTION

This case is about people being held in prison unlawfully due to the Bureau of Prisons' (BOP) failure to transfer eligible people out of prison within the time required by the First Step Act. In the First Step Act, Congress created a system under which certain people in federal prison can earn time credits to reduce their time in prison. The law requires the BOP to move people to supervised release or to "prerelease custody"—which means either home confinement or placement in a residential reentry center (also known as a "halfway house")—when the time credits they have earned equal the remaining time on their sentences. The mandatory nature of this instruction is explicit in the statute, which provides that time credits earned "*shall* be applied toward time in prerelease custody or supervised release" and that the BOP "*shall* transfer eligible prisoners . . . into prerelease custody or supervised release" when certain conditions are met. 18 U.S.C. § 3632(d)(4)(C) (emphasis added).

The BOP is ignoring this statutory command. It does not transfer all eligible incarcerated people, including Plaintiffs, out of prison when their time credits equal the remaining time on their sentences, as required by law. In addition, its regulation purporting to implement the earned time credit program contravenes Congress's command that the BOP "shall" apply earned time credits toward time in prerelease custody or supervised release by replacing "shall" with "may," providing

---

[1] Plaintiffs have been unable to meet and confer with Defendants' counsel regarding this motion because no counsel has yet appeared for the Defendants. Plaintiffs believe Defendants will not consent to the granting of this motion.

that "the Bureau *may* apply [First Step Act] Time Credits toward prerelease custody or supervised release."  Application of FSA Time Credits, 28 C.F.R. § 523.44(a)(1) (2022) (emphasis added).

Plaintiffs Vanessa Crowe and Glen Galemmo and thousands of others suffer irreparable harm each day they are imprisoned for longer than permitted under the First Step Act.  Immediate injunctive relief is warranted and necessary to stop the significant harm caused by the BOP's practice and ensure the BOP transfers people to prerelease custody in accordance with the First Step Act.

## LEGAL AND FACTUAL BACKGROUND

### I.    The First Step Act's Earned Time Credits System

In 2018, a bipartisan Congress passed, and President Trump signed, the First Step Act, a major legislative effort to "allow[] prisons to help criminals transform their lives . . . so that we are not perpetuating the cycle of crime that continues to plague communities across the country . . . ."  164 Cong. Rec. 7642 (2018) (statement of Sen. Cornyn).  One of the core ways Congress accomplished that objective was by establishing in the First Step Act a system of earned time credits that incentivizes people in federal prisons to participate in programs designed to reduce the risk of recidivism.  *See* 18 U.S.C. § 3632(d).

The earned time credits system in the First Step Act works as follows:  People incarcerated in federal prisons—except for those who have been convicted of certain enumerated federal offenses—are eligible to earn "time credits" if they "successfully complete[] evidence-based recidivism reduction programming or productive activities."   18 U.S.C. §§ 3632(d)(4)(A), 3632(d)(4)(D).  The statute provides that time credits "shall" be earned as follows:

(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

2

(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

*Id.* §§ 3632(d)(4)(A)(i)–(ii). Each time credit equals one day of imprisonment. *See id.* (referring to time credit increments as "days of time credits").

The purpose of time credits, as the name denotes, is to reduce the amount of time eligible people spend in prison. The First Step Act accordingly requires that "[t]ime credits earned . . . by prisoners who successfully participate in recidivism reduction programs or productive activities *shall* be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). It further provides that the BOP "*shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." *Id.* (emphasis added).

Section 3624(g) sets forth the following prerequisites for a person to be transferred into prerelease custody or supervised release by application of his or her earned time credits:

(1) the person has "earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment," *id.* § 3624(g)(1)(A);

(2) the person "has shown through the periodic risk reassessments [conducted by BOP] a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment," *id.* § 3624(g)(1)(B);

(3) the person "has had the remainder of [his or her] imposed term of imprisonment computed under applicable law," *id.* § 3624(g)(1)(C);

(4) to be placed in prerelease custody, the person must have been "determined . . . to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner" or, alternatively, have had a "petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that" the person "would not be a danger to society if transferred to prerelease custody or supervised release," "has made a good faith effort to lower their recidivism risk through participation in recidivism reduction

3

programs or productive activities," and "is unlikely to recidivate," *id.* § 3624(g)(1)(D)(i); and

(5) "in the case of a prisoner being placed in supervised release, the prisoner has been determined . . . to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner[,]" *id.* § 3624(g)(1)(D)(ii).

For people who satisfy the above criteria, time credits can be applied in three ways: (1) toward placement in home confinement, which is one form of prerelease custody, *id.* §§ 3624(g)(2), (g)(2)(A); (2) toward placement in a residential reentry center (commonly referred to as a "halfway house"), which is another form of prerelease custody, *id.* §§ 3624(g)(2), (g)(2)(B); and/or (3) if a person's sentence includes a term of supervised release, the BOP "may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits," *id.* § 3624(g)(3).

The First Step Act affords the BOP discretion in selecting among these options. It may, for example, apply time credits toward placement in home confinement rather than in a halfway house, or *vice versa*. *See id.* § 3624(g)(2). The First Step Act does not, however, permit the BOP to choose *none* of these options: Congress made clear that time credits earned by eligible people "*shall* be applied toward time in prerelease custody or supervised release," *id.* § 3632(d)(4)(C) (emphasis added), and that the BOP "*shall* transfer eligible prisoners . . . into prerelease custody or supervised release" once they have earned time credits equal to the time remaining on their sentences, *id.* (emphasis added). Accordingly, if earned time credits, up to 365, are not applied toward supervised release, they must be applied toward prerelease custody.[2] Unlike for supervised

---

[2] In practice, and for purposes of this motion, Plaintiffs do not contest the BOP's application of time credits toward supervised release because, to Plaintiffs' knowledge, the BOP is generally applying the statutory maximum of 365 days of time credits toward supervised release. *See* 18 U.S.C. § 3624(g)(3) (early supervised release is "not to exceed 12 months"); BOP, Program Statement 5410.01 CN-2, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*, 3, 17 (March 10, 2023), https://www.bop.gov/policy/progstat/5410.01_c

release, the First Step Act does not limit the number of time credits a person can apply to prerelease custody.

Congress also explicitly prescribed the time for such transfers: When an eligible person's earned time credits equal the remainder of his or her imposed term of imprisonment. It did so in two provisions of the First Step Act. First, section 3624(g)(1)(A) defines an "eligible prisoner" as one who has met the criteria regarding recidivism risk noted above and "has earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). Second, section 3632(d)(4)(C) provides that "[t]he Director of the Bureau of Prisons *shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." *Id.* § 3632(d)(4)(C) (emphasis added).

The mandatory nature of Congress's commands is made even clearer by a further command that "the Director of the Bureau of Prisons *shall ensure* there is sufficient prerelease custody capacity to accommodate *all eligible prisoners*." *Id.* § 3624(g)(11) (emphasis added).

## II.    The BOP's Practice And Regulation Regarding Earned Time Credits

Notwithstanding the clear mandatory language in the First Step Act, the BOP has treated its commands as optional. The BOP's practice and regulation make this apparent.

Although the BOP's own records reflect that Ms. Crowe earned enough credits to be moved out of prison and into prerelease custody on December 24, 2024, prior to filing this lawsuit, the BOP informed Ms. Crowe it would not move her out of prison until May 7, 2025 (her "halfway

---

n2.pdf (for eligible people, "up to 365 days of earned [time credits] will be automatically applied to early release"); ECF No. 2-8, Ex. 5 to Gates Decl. (First Step Act Assessment of Vanessa Crowe (Oct. 8, 2024)), at 2–3 (showing that the BOP applied 365 days of time credits toward supervised release for Ms. Crowe); ECF No. 2-11, Ex. 8 to Gates Decl. (First Step Act Assessment of Glen Galemmo (Oct. 13, 2024)), at 2–3 (showing that the BOP applied 365 days of time credits toward supervised release for Mr. Galemmo). Doing so, however, does not change the BOP's obligation under the First Step Act to apply any earned time credits beyond 365 toward prerelease custody.

house date")—*more than four months* past the date on which she was required to be transferred under the First Step Act.[3]  Shortly after this lawsuit was filed, the BOP gave Ms. Crowe a new halfway house date of January 15, 2025, which *still* is three weeks past the date on which she was required to be moved.[4]  Similarly, the BOP's own records reflect that Mr. Galemmo will have enough time credits to be moved out of prison and into prerelease custody on February 26, 2025, but the BOP has informed Mr. Galemmo it will not move him out of prison until May 22, 2025— nearly *three months* past the date on which he is required to be transferred under the First Step Act.[5]

Plaintiffs are not outliers.  The BOP has informed several putative class members that it will not move them out of prison until months after the date on which their earned time credits equaled the remaining time on their sentences.  Richard Rudisill, who is incarcerated in Virginia, earned more than enough time credits to be transferred to prerelease custody by November 30, 2024, but remained incarcerated as of December 20, 2024, the date this case was filed.[6]  Danyell Roberts, who is incarcerated in Florida, earned more than enough time credits to be transferred to prerelease custody by November 30, 2024, but the BOP has designated her transfer date as March 19, 2025.[7]  Richard Armbre Williams, who is incarcerated in South Carolina, had earned 625 credits towards prerelease custody by September 5, 2024, and had only 406 days left on his

---

[3] *See* ECF No. 2-8, Ex. 5 to Gates Decl. (First Step Act Assessment of Vanessa Crowe (Oct. 8, 2024)) at 2; ECF No. 2-1, Crowe Decl. ¶ 16.

[4] *See* Ex. 1 to Gates Decl., Email from Vanessa Crowe to Emma Andersson (Jan. 2, 2025), at 1.

[5] *See* ECF No. 2-11, Ex. 8 to Gates Decl. (First Step Act Assessment of Glen Galemmo (Oct. 13, 2024)) at 2; ECF No. 2-2, Galemmo Decl. ¶ 2.

[6] *See* ECF Nos. 2-14, Ex. 11 to Gates Decl. (First Step Act Assessment of Richard Rudisill (Mar. 30, 2024)) at 1, 2-9, Ex. 9 to Gates Decl. (Bureau of Prisons, *Find An Inmate*, https://www.bop.gov/inmateloc/ (search: "Richard Rudisill")) at 1

[7] *See* ECF Nos. 2-18, Ex. 15 to Gates Decl. (First Step Act Assessment of Danyell Roberts) at 1, 2-19, Ex. 16 to Gates Decl. (Email from Danyell Roberts to Emma Andersson (Sept. 25, 2024)) at 2.

sentence at that time, yet he remains incarcerated as of December 20, 2024, the date this case was filed.[8]  Jamie Sigmon, who is incarcerated in Illinois, earned enough time credits to be moved to prerelease custody on January 6, 2025, but the BOP has designated her transfer date as March 21, 2025.[9]  And Kay Gow, who is incarcerated in Florida, will earn enough time credits to be moved to prerelease custody on March 27, 2025.[10]  Before this lawsuit was filed, the BOP designated Ms. Gow's transfer date as September 9, 2025,[11] but on January 6, 2025, shortly after this lawsuit was filed, the BOP informed her she will be transferred to home confinement on March 12, 2025.[12]

There are tens of thousands of others who are or foreseeably will be overheld in prison if the BOP continues to disregard the law.[13]  The BOP has acknowledged delays in transferring people to prerelease custody by application of their earned time credits.  While giving sworn testimony to the House Judiciary Committee, Defendant Colette Peters, Director of the BOP, was asked if it was accurate that more than 60,000 First Step Act-eligible people are facing 3- to 12-month delays in First Step Act transfers.  Director Peters responded: "I'd want to confirm with my team on the accuracy of those numbers but anecdotally that is what I'm hearing."[14]  Practitioners

---

[8]  *See* ECF Nos. 2-20, Ex. 17 to Gates Decl. (Bureau of Prisons, *Find An Inmate*, https://www.bop.gov/inmateloc/ (search: "Richard Armbre Williams")) at 1, 2-22, Ex. 19 to Gates Decl. (First Step Act Time Credit Assessment of Richard Williams) at 1.

[9]  *See* ECF Nos. 2-25, Ex. 22 to Gates Decl. (First Step Act Time Credit Assessment of Jamie Sigmon) at 4, 2-26, Ex. 23 to Gates Decl. (Letter from Jamie Sigmon to Emma Andersson (Nov. 5, 2024)) at 1.

[10]  *See* ECF No. 2-29, Ex. 26 to Gates Decl. (First Step Act Time Credit Assessment of Kay Gow) at 2.

[11]  *See* ECF No. 2-30, Ex. 27 to Gates Decl. (Response to Request for Administrative Remedy (Sept. 3, 2024)) at 1.

[12]  *See* Ex. 2 to Gates Decl., Email from Kay Gow to Emma Andersson (Jan. 7, 2025), at 1.

[13]  *See* ECF No. 2-4, Ex. 1 to Gates Decl. (U.S. DEP'T OF JUST., *First Step Act Annual Report* 19 (2024)) (reflecting that BOP considers over 47,000 people in its custody who are eligible to earn time credits as having a low or minimum risk of recidivism).

[14]  *See* ECF No. 2-5, Ex. 2 to Gates Decl. (*Oversight of the Federal Bureau of Prisons Before the Subcomm. on Crime and Fed. Gov't Surveillance of the H. Comm. on the Judiciary*, 118th Cong.

confirm these delays are affecting people in prisons across the country.[15]

The BOP's practice is consistent with its 2022 regulation, "Application of FSA [(First Step Act)] Time Credits," 28 C.F.R. § 523.44, purporting to implement the First Step Act's earned time credits system.  The regulation, however, conflicts with the First Step Act by stating that the BOP "*may* apply FSA Time Credits toward prerelease custody or supervised release" when certain conditions are met, 28 C.F.R. § 523.44(a)(1) (emphasis added); *accord id.* § 523.44(c)–(d), rather than "*shall* be applied" as the First Step Act requires, 18 U.S.C. § 3632(d)(4)(C) (emphasis added).

The BOP has taken the same position—that it has discretion whether or not to apply earned time credits under the First Step Act—in litigation.  *See, e.g.*, Sur-reply to Pet'r's Reply in Supp. of Writ of Habeas Corpus Pursuant to  28 U.S.C. § 2241 at 7, *Gattis v. Jacquez*, No. 3:23-cv-00301 (D. Ore. Oct. 2, 2023), ECF No. 23 (asserting that "[t]he FSA thus merely accelerates when an inmate may be considered for prerelease custody, but the FSA does not strip BOP's discretion to make that decision.").[16]  In addition, the BOP's "Frequently Asked Questions" page on its website provides that "[t]ime credits *may* be applied by the BOP to place an inmate in pre-release custody in the community or on supervised release . . . ."[17]

Curiously, in a Program Statement amended in 2023, the BOP states that "in all cases, earned time credits will be applied to prerelease custody . . . as required by the First Step Act" and

---

at 2:05:34 (July 23, 2024) (Testimony of Colette Peters, Director, BOP), https://www.youtube.com/watch?v=fqwvjvDaWPY&t=7s (last accessed Dec. 18, 2024)).

[15] *See* ECF No. 2-31, P. Richman Decl. ¶¶ 12–14 (stating knowledge of multiple people within the jurisdiction of the Fourth Circuit experiencing First Step Act prerelease delays, as well as reports of cases in California, Oregon, Massachusetts, New Hampshire, Connecticut, Pennsylvania, and South Carolina); ECF No. 2-32, A. Guernsey Decl. ¶ 22 (stating knowledge of people experiencing First Step Act prerelease delays at prisons in California, Florida, Virginia, and South Carolina).

[16] The court did not decide the merits of the BOP's position.

[17] BOP, *First Step Act – Frequently Asked Questions*, https://www.bop.gov/inmates/fsa/faq.jsp#f sa_time_credits (last accessed Jan. 13, 2025) (emphasis added).

acknowledges that the First Step Act "requires that, if an individual meets the [eligibility criteria], the credits must be applied when the amount of time credits earned is equivalent to [the] remainder of the prisoner's imposed term of imprisonment[.]"[18]  That Program Statement nevertheless contains the discretionary "may" language present in the BOP's regulation.[19]  Moreover, notwithstanding the BOP's 2023 recognition of its legal obligations, it has failed to amend its earlier regulation and has failed to honor these obligations in practice.

Both as a matter of practice and by written policy, the BOP is disregarding the commands of the First Step Act and imprisoning people longer than legally permissible.

## III.    The Harms To Plaintiffs And Their Families Caused By The BOP's Failure To Obey The Law

Before this lawsuit was filed, the BOP informed both Ms. Crowe and Mr. Galemmo that they would be transferred to prerelease custody *after* the dates on which the BOP's own records reflect their earned time credits equaled or will equal the remainder of their prison sentences.  And both have suffered and will continue to suffer significant and irreparable harm as a result of being held in prison longer than the First Step Act permits.

Every day of imprisonment past the date on which a person is required to be moved to prerelease custody causes serious harm.  Spending time in prison is meaningfully different from spending time in a halfway house or in home confinement.  In either situation, the ability to communicate with loved ones, attend medical appointments, and spend time in the community are all greatly increased.  These experiences are valuable in their own right and also help people leaving prison transition back to life in the community.  In a halfway house, residents are generally

---

[18] BOP, Program Statement 5410.01 CN-2, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*, 3 (Mar. 10, 2023), https://www.bop.gov/policy/progst at/5410.01_cn2.pdf.
[19] *Id.* at 13–14.

required to work full-time jobs and are permitted to leave for additional activities including visiting with family, counseling or job training appointments, and recreation. As a result, they are out in the community on a regular basis experiencing a degree of liberty that is materially different from life in prison. With home confinement, the contrast with prison is even greater because people are permitted to live with, help care for, and reintegrate into their families' day-to-day lives.

Ms. Crowe and her family "have been through a rollercoaster, trying to understand when [they] will finally be reunited." ECF No. 2-1, Crowe Decl. ¶ 5. When Ms. Crowe first learned that she was entitled to be moved to a halfway house, she considered it "one of the happiest moments of [her] life," and "started making plans" for herself and with her children. *Id.* ¶¶ 7–8. Ms. Crowe made plans with her Pastor for her to reconnect in person with her church community. *Id.* ¶ 13. She made plans to attend Narcotics Anonymous meetings. *Id.* ¶ 14. Neither her church nor Narcotics Anonymous are available to her in prison. *Id.* ¶ 30. She even lined up a job, as a customer service representative, where she would be able to put into practice what she learned at an extensive Customer Service Apprenticeship she participated in while incarcerated. *Id.* ¶ 15. She planned to use the earnings from her new job to help her get back on her feet financially and ease her transition from prison. *Id.* In her words, upon her transfer, she "could be a tax paying citizen instead of a burden on society." *Id.* ¶ 30. Moving to prelease custody would also allow Ms. Crowe to have untimed conversations with her family outside prison walls, build a relationship with her 2-year-old granddaughter, and spend time with her adult children. *Id.* ¶¶ 10–15. Moving to prelease custody on time also would have allowed Ms. Crowe to spend Christmas with her granddaughter. *Id.* ¶ 12. It is impossible to quantify the hardship from missed time with family, especially young children. As Ms. Crowe has said about missing her granddaughter's birthdays: "The first two I missed were on me, no doubt. But if I miss her third birthday, that one will be on

BOP." *Id.* ¶ 31.

Ms. Crowe's dreams were dashed when the BOP told her that her transfer would not occur until May 7, 2025. *Id.* ¶ 16. She "felt as if [she] had no air in [her] lungs" and all the hope she had built up "was ripped away as if a knife had carved them out of [her] heart...." *Id.* ¶ 17. Telling her children the news "was one of the hardest things [she had] ever done," *id.* ¶ 23, and "the prospect of being held in prison five months longer than [she] should be" caused her to "lose[] [her] strength," *id.* ¶ 27. She has been "left with increasing emotional instability as the days wear on." *Id.* ¶ 32. Despite being in prison for nearly a decade, "these last months have been the most difficult of all" for Ms. Crowe because the BOP has "held [her] in prison illegally" by failing to move her to prerelease custody in accordance with the First Step Act. *Id.* According to Ms. Crowe, "it gets harder each day." *Id.*

Mr. Galemmo and his family similarly are suffering as a result of the BOP's refusal to move him to prerelease custody within the time required by the First Step Act. *See generally* ECF No. 2-2, Galemmo Decl. "This delay has and will cause substantial hardship" for many reasons, including because Mr. Galemmo's wife is caring for her father who has late-stage pancreatic cancer while also supporting their daughter through her divorce. *Id.* ¶ 7. Mr. Galemmo's "daily presence and ability to assist with these responsibilities would significantly reduce the immense stress [his] wife and daughter are experiencing." *Id.* The additional income Mr. Galemmo would earn through the job waiting for him when he is moved to prerelease custody would provide his family "much-needed financial relief." *Id.* ¶ 9. In addition, incarceration has taken a toll on 59-year-old Mr. Galemmo's health. He has a chronic kidney condition for which he is unable to obtain appropriate medical care while in prison, and he has not received dental care in over seven years. *Id.* ¶ 10. "The delay in [his] prerelease date will only prolong these health risks." *Id.*

Learning that the BOP would not move him into prerelease custody until nearly three months past the date on which his earned time credits will equal the remaining time on his sentence caused Mr. Galemmo "profound disappointment, frustration and anxiety for [his] wife, [their] five adult children, and four grandchildren." *Id.* ¶ 5.  "The emotional toll of this broken promise is immeasurable and continues to affect [their] collective mental well-being." *Id.*  Being held in prison "nearly three months longer than the law allows" and "losing this time that [he] and [his] family expected" have been "extremely difficult." *Id.* ¶ 6.  The additional time Mr. Galemmo faces in prison past the date on which he is required to be moved to prerelease custody under the First Step Act has been "deeply distressing" and has left Mr. Galemmo feeling "helpless[]." *Id.* ¶ 8.

## ARGUMENT

To obtain a preliminary injunction, a party "must show that (1) it 'is likely to succeed on the merits'; (2) it 'is likely to suffer irreparable harm in the absence of preliminary relief'; (3) 'the balance of equities tips in [its] favor'; and (4) the issuance of a preliminary injunction 'is in the public interest.'" *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1324 (D.C. Cir. 2024) (quoting *Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716, 721 (D.C. Cir. 2022)). As set forth below, Plaintiffs satisfy all four factors.  In addition, given that Plaintiffs seek preliminary injunctive relief on behalf of a proposed class as defined in their motion for class certification, ECF No. 2, the Court should provisionally certify the class and issue classwide preliminary relief.  *See, e.g.*, *Damus v. Nielsen*, 313 F. Supp. 3d 317, 328–35 (D.D.C. 2018) (provisionally certifying, for purpose of granting preliminary injunction, class of detained asylum seekers).

I.      **Plaintiffs Are Likely To Succeed On The Merits Of Their Claims.**

Plaintiffs need only show a likelihood of success "on at least one count of [the] underlying Complaint." *Adams v. District of Columbia*, 285 F. Supp. 3d 381, 390 (D.D.C. 2018).  Here, Plaintiffs are likely to succeed on the merits of both their claims that (1) the First Step Act requires the BOP to transfer eligible incarcerated people to prerelease custody when their earned time credits equal the remainder of their sentences, and (2) the BOP's Regulation, 28 C.F.R. § 523.44, is unlawful and should be set aside under the Administrative Procedure Act, 5 U.S.C. § 706.

A.  **Plaintiffs are likely to succeed on the merits of their claim that the BOP is violating the First Step Act.**

*1.      The First Step Act requires the BOP to move people to prerelease custody when their earned time credits equal the remainder of their sentences.*

The First Step Act requires the BOP to transfer eligible people into prerelease custody or supervised release when their earned time credits equal the remainder of their sentences.  The plain text of the statute makes this clear by instructing that "[t]ime credits earned . . . by prisoners . . . *shall* be applied toward time in prerelease custody or supervised release" and that "[t]he Director of the Bureau of Prisons *shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."  18 U.S.C. § 3632(d)(4)(C) (emphasis added).  The BOP has no choice:  It must ("*shall*") apply time credits prisoners earn toward time in prerelease custody or supervised release, and it must ("*shall*") transfer "*eligible prisoners*"—people who have "earned time credits . . . in an amount that is equal to the remainder of [their] imposed term[s] of imprisonment" and have met the other prerequisites, *id.* § 3624(g)(1)(A)—into either prerelease custody or supervised release.

The "first sign" that the First Step Act "impose[s] an obligation is its mandatory language: 'shall.'"  *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 310–11 (2020).  "'Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.'"  *Id.*

13

(quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016)); *see also, e.g.*, *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 887 (D.C. Cir. 2024) ("While the word 'may' is permissive and signals discretion, the word 'shall' generally signals a mandatory duty."); *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016) ("'The traditional, commonly repeated rule is that *shall* is mandatory and *may* is permissive[.]'") (emphasis in original) (quoting Antonin Scalia & Bryan a. Garner, Reading Law: The Interpretation of Legal Texts 112 (2012)).

Statutory context confirms that the word "shall" as used in section 3632(d)(4)(C) "is used in its ordinary, mandatory sense" and "imposes a clear duty to act." *In re Nat'l Nurses United*, 47 F.4th 746, 754 (D.C. Cir. 2022). Section 3624(g), which Congress incorporated by reference in section 3632(d)(4)(C), provides that the BOP "*may* transfer [a] prisoner to begin [a] term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." 18 U.S.C. § 3624(g)(3) (emphasis added). The immediately preceding subsection, by contrast, instructs that "[a] prisoner *shall* be placed in prerelease custody[.]" *Id.* § 3624(g)(2) (emphasis added). Although section 3624(c)—which predates the First Step Act and exists as a separate authority for the BOP to transfer people into prerelease custody—provides that the BOP "shall, *to the extent practicable*," move people into prerelease custody, *id.* § 3624(c)(1) (emphasis added), the First Step Act does not include "to the extent practicable" or any similar qualifying language with respect to the application of earned time credits. Indeed, Congress made clear it intended the opposite by instructing the BOP to "ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners." *Id.* § 3624(g)(11). These "adjacent provisions"—which "differentiate[] between when the [BOP] 'shall' take certain actions and when [it] 'may' exercise discretion"—"underscore [the] mandatory

nature" of Congress's command that if earned time credits, up to 365, are not applied toward supervised release, they must be applied toward prerelease custody, and the BOP must transfer people to prerelease custody once they are eligible. *See Me. Cmty. Health Options*, 590 U.S. at 310.

Existing caselaw supports this commonsense reading. There is a "line of cases from across the country holding that 18 U.S.C. § 3632(d)[(4)](C) does not afford the BOP any discretion in releasing eligible prisoners, and the BOP may not add additional requirements beyond the definition of eligible prisoners provided for in the statute." *[Redacted] v. Fed. Bureau of Prisons*, 2023 WL 9530181, at *5 (S.D.N.Y. Dec. 28, 2023), *report and recommendation adopted sub nom. Doe v. Fed. Bureau of Prisons*, 2024 WL 455309 (S.D.N.Y. Feb. 5, 2024) (collecting cases); *see also Sichting v. Rardin*, 2024 WL 4785007, at *3 (D. Minn. Nov. 14, 2024) ("Section 3632(d) does not include discretionary language. It simply states that the BOP 'shall transfer . . . into prerelease custody or supervised release' a prisoner who has 'earned time credits . . . equal to the remainder of [his] term of imprisonment' and met other eligibility requirements.") (alteration in original) (quoting 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(1)(A)); *Woodley v. Warden, USP Leavenworth*, 2024 WL 2260904, at *3 (D. Kan. May 15, 2024) ("Under a plain reading of this provision of the FSA, which includes the word 'shall', the BOP is required to transfer a prisoner to prerelease custody or supervised release if the prisoner is 'eligible' as determined under Subsection 3624(g).").

A contrary construction would not only ignore the statute's plain language; it would also contravene the legislative purpose underlying the First Step Act. "[C]ourts should prefer textually permissible readings that would advance statutory or regulatory goals over ones that would frustrate them." *NextEra Energy Res., LLC v. FERC*, 118 F.4th 361, 371 (D.C. Cir. 2024). A

central goal of the First Step Act is to reduce the risk of recidivism by providing incentives for people who are incarcerated to "prepare for reentry." 164 Cong. Rec. 7745 (2018) (statement of Sen. Blumenthal). Speaking about the earned time credits system, Senator Cornyn underscored that "the incentives in this program are really important." *Id.*, 7746; *see also Guerriero v. Miami RRM*, 2024 WL 2017730, at *3 (11th Cir. 2024) ("As is apparent from the overall statutory language, the obvious purpose of Congress—in providing for these time credits—was to provide an incentive for prisoners to attend the recidivism reduction programs Congress was devising, and the obvious incentive was that the time credits would reduce a prisoner's incarceration time . . . .").

Leaving it up to the BOP to decide not only when but whether to apply earned time credits and transfer eligible people out of prison renders the incentive that is the linchpin of the earned time credit program—early release—significantly weaker. Indeed, interpreting section 3632(d)(4)(C) to permit the BOP to decide whether and when to transfer eligible prisoners into prerelease custody would reduce people's incentives to earn time credits beyond 365—the maximum amount that can be applied toward supervised release, 18 U.S.C. § 3624(g)(3)—because their prison sentences could expire before the BOP ever moves them into prerelease custody.

Here, applying the plain text of the First Step Act is—unsurprisingly—consistent with Congress's stated purpose: If earned time credits, up to 365, are not applied toward supervised release, they must be applied toward prerelease custody, and the BOP must, by application of those time credits, transfer people into prerelease custody when their earned time credits equal the remainder of their sentences.

      2.    *This Court has inherent equitable power to enjoin the BOP from violating the First Step Act.*

Federal courts have inherent equitable power to enjoin "'public officer[s]'" from violating federal law. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (quoting *Carroll*

*v. Safford*, 44 U.S. 441, 463 (1845)).  As the Supreme Court instructed in *Armstrong*:

> [W]e have long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law. *See, e.g.*, *Osborn v. Bank of United States*, 9 Wheat. 738, 838–839, 844 (1824); *Ex parte Young*, 209 U.S. 123, 150–151 (1908) (citing *Davis v. Gray*, 16 Wall. 203, 220 (1873)). But that has been true not only with respect to violations of federal law by state officials, <u>but also with respect to violations of federal law by federal officials</u>. *See American School of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902); *see generally* L. Jaffe, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 152–196 (1965). . . . What our cases demonstrate is that, 'in a proper case, relief may be given in a court of equity . . . to prevent an injurious act by a public officer.' *Carroll v. Safford*, 3 How. 441, 463 (1845).
>
> The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.

575 U.S. at 326–27 (emphasis added) (cleaned up).  *See also Crown Castle Fiber, L.L.C. v. City of Pasadena*, 76 F.4th 425, 434–35 (5th Cir. 2023) (holding that even in the absence of a private right of action in a federal statute, plaintiff could invoke the court's equity jurisdiction to enjoin city from enforcing land-use standards in a manner that plaintiff alleged violated a federal statute).

As this Court recently recognized in exercising its inherent equitable power to preliminarily enjoin federal agencies from violating Section 504 of the Rehabilitation Act, "by default, federal courts have 'jurisdiction in equity.'"  *Mathis v. U.S. Parole Comm'n*, 2024 WL 4056568, at *11 (D.D.C. Sept. 5, 2024) (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)).  "[T]he 'full scope of [this] jurisdiction is to be recognized and applied,'" *id.* (alteration in original) (quoting *Porter*, 328 U.S. at 398), "absent only 'the clearest command' otherwise in a statute," *id.* (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013)).  "This limiting command can be either express or implied."  *Id.*

Congress has not displaced the Court's equitable power to enjoin the BOP from violating the First Step Act.  There is nothing in the First Step Act or any other statute that expressly supplants the Court's equity jurisdiction.  *See generally* First Step Act of 2018, Pub. L. No. 115-

17

391, 132 Stat. 5194, 5196–5208 (2018), ECF No. 1-1, Ex. A to Compl.

Although Congress has provided that BOP's decision regarding a person's "place of imprisonment under this subsection is not reviewable by any court," 18 U.S.C. § 3621(b)(5), that provision is not relevant here.  The First Step Act strips the BOP of discretion with respect to the application of earned time credits and mandates that the BOP transfer people out of prison upon eligibility.  When a person has met the requirements under the First Step Act, including that their time credits equal the time left on their sentence, the person must be transferred to prerelease custody or supervised release.  The BOP retains its usual discretion to designate the *place* to which a person is transferred—*i.e.*, to which halfway house, or to home confinement—but the categorically different decision to transfer a person from prison to prerelease custody or supervised release is not covered by section 3621(b).  *See Briones-Pereyra v. Warden*, 2024 WL 4171380, at *2 (E.D. Cal. Sept. 12, 2024) (holding that the court has jurisdiction to compel BOP action regarding earned time credits "because application of [earned time credits] to eligible prisoners who have earned them is *required*, not discretionary, under the statute") (emphasis in original).  That conclusion is reinforced by the fact that in making a decision "under this subsection [3621(b)]," the BOP is required to consider a range of factors, *see* 18 U.S.C.  §§ 3621(b)(1)–(5) (listing facility resources, facts about the offense, facts about the offender, statements by the sentencing court, and policy statements by the Sentencing Commission), that are far afield from the decision that Congress made in the First Step Act regarding the timing and prerequisites to be transferred to prelease custody.  Accordingly, Congress's bar to judicial review regarding the selection of a "place of imprisonment" has no bearing on the enforceability of the distinct congressional command in the First Step Act regarding transfer to prelease custody.

Nor does any statute implicitly displace this Court's inherent equitable power to enforce

18

the First Step Act.  "[S]tatutes implicitly displace equity jurisdiction in only two scenarios: (1) where Congress has provided a 'detailed and exclusive remedial scheme,'" *Mathis*, 2024 WL 4056568, at *11 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 647 (2002)), or "(2) where a statute contains an alternative remedy and the right at issue is 'judicially unadministrable,'" *id.* (quoting *Armstrong*, 575 U.S. at 328).  A "'detailed and exclusive'" scheme, *id.* (quoting *Verizon Md.*, 535 U.S. at 647), exists only where a statute sets out "'intricate procedures'" that so restrict the scope of remedies as to reflect congressional "intent to displace courts' traditional equitable powers," *id.* (quoting *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 74–75 (1996)).  No such detailed remedial scheme exists in the First Step Act or in any other applicable statute.  The First Step Act provides no relevant remedies.  Although the Administrative Procedure Act (APA) permits courts to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1), *see infra* 20–23, it does not contain such intricate procedures as to suggest Congress intended to displace courts' traditional equitable powers.  Unlike the statute in *Seminole Tribe*, which prescribed a "modest set of sanctions" that demonstrated Congress "intended . . . to limit significantly[] the duty imposed by [the statute]," 517 U.S. at 74–75, the APA is a statute of general applicability and does not contain any textual or contextual clues to suggest Congress intended it to supplant courts' equity jurisdiction to enjoin federal law violations by federal officials.

The second scenario—"where a statute contains an alternative remedy *and* the right at issue is 'judicially unadministrable,'" *Mathis*, 2024 WL 4056568, at *11 (quoting *Armstrong*, 575 U.S. at 328) (emphasis added)—similarly does not apply here.  Although the APA contains an alternative remedy, the right at issue—timely transfers into prerelease custody—is not judicially unadministrable.  Indeed, courts have ordered the BOP to "apply [an incarcerated person's] First Step Act time credits and transfer [that person] to pre-release custody forthwith."  *[Redacted]*,

2023 WL 9530181, at *7; *see also Woodley*, 2024 WL 2260904, at *4 (ordering respondent to "effect petitioner's transfer to prerelease custody").

This Court therefore can enjoin the BOP from violating the First Step Act and require it to transfer eligible people into prerelease custody within the time required by the First Step Act pursuant to its inherent equitable power.

3.    *Alternatively, the Court can compel the BOP to transfer eligible people within the time required by the First Step Act pursuant to the Administrative Procedure Act.*

Alternatively, this Court can, under the Administrative Procedure Act, require the BOP to transfer eligible people as required by the First Step Act.  The APA permits judicial review of all "final agency action for which there is no other adequate remedy in court," 5 U.S.C. § 704, except when a statute "preclude[s] judicial review" or the "agency action is committed to agency discretion by law," *id.* § 701(a)(1)–(2).  A reviewing court "shall . . . compel agency action unlawfully withheld."[20]  *Id.* § 706(1).  To constitute an unlawfully withheld agency action, the agency must have "failed to take a *discrete* action that it is *required to take*."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).  The BOP's refusal to transfer

---

[20] To be clear, Plaintiffs do not argue "unreasonabl[e] delay[]."  5 U.S.C. § 706(1) ("compel agency action unlawfully withheld or unreasonably delayed").  The multi-factor balancing test set forth in *Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79–80 (D.C. Cir. 1984), and applied by the D.C. Circuit in section 706(1) unreasonable agency delay cases, *e.g.*, *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 814–20 (D.C. Cir. 2024), therefore does not apply here.  *See, e.g.*, *Kirwa v. United States Dep't of Def.*, 285 F. Supp. 3d 21, 41–42 (D.D.C. 2017) (holding plaintiffs were likely to succeed on the merits of their agency action unlawfully withheld claim without mentioning *TRAC*); *see also Forest Guardians v. Babbitt*, 174 F.3d 1178, 1191 (10th Cir. 1999) (declining to apply the *TRAC* standard for "discretionary time schedule[s]" in a situation where "Congress has established a specific, non-discretionary time within which the agency must act" because "[w]hen an agency fails to meet a concrete statutory deadline, it has unlawfully withheld agency action.").  Plaintiffs' challenge is not that the BOP has failed to transfer eligible people into prerelease custody within a "reasonable" time, but rather that it is not "transfer[ring] eligible prisoners," 18 U.S.C. § 3632(d)(4)(C), by failing to transfer people when they are eligible as required by the statute.

eligible people into prerelease custody within the time required by the First Step Act is reviewable by this Court under the APA and constitutes a discrete agency action that it is required to take.

An agency action is final if it "mark[s] the consummation of the agency's decisionmaking process and is one by which rights or obligations have been determined, or from which legal consequences will flow." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (internal quotation marks and citation omitted). "Although this definition most obviously contemplates affirmative acts, a plaintiff can also challenge agency inaction . . . where the agency's 'failure to act . . . is the functional equivalent of final agency action.'" *Lewis v. U.S. Parole Comm'n*, 2024 WL 3566135, at *4 (D.D.C. July 29, 2024) (quoting *Hi-Tech Pharmacal Co., Inc. v. FDA*, 587 F. Supp. 2d 1, 10 (D.D.C. 2008)). Moreover, "where 'an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review.'" *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) (quoting *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987)).

The BOP's refusal to transfer eligible people within the time required by the First Step Act is final agency action because the BOP is "under an unequivocal statutory duty to act" and has "fail[ed] so to act." *Id.* As discussed above, the First Step Act unequivocally requires the BOP to "transfer eligible prisoners . . . into prerelease custody or supervised release" when their earned time credits equal the time remaining on their sentences. 18 U.S.C. § 3632(d)(4)(C). The BOP, however, is not transferring eligible prisoners into prerelease custody and instead is keeping eligible prisoners like Plaintiffs in prison. Its inaction reflects the consummation of the BOP's decisionmaking process and is one by which rights or obligations have been determined, as the BOP's refusal to transfer eligible people on the proper date affects their right to be transferred out of prison as required by the First Step Act. *See Corner Post*, 603 U.S. at 808. Moreover, neither

the First Step Act nor any other statute provides Plaintiffs any "other adequate remedy in court."

5 U.S.C. § 704.  *Cf. Seneca v. Price*, 257 F. Supp. 3d 95, 96 (D.D.C. 2017) (private right of action

under Title VII supplied adequate remedy in court that prevented plaintiff from invoking the APA).

The BOP's refusal to transfer eligible people into prerelease custody satisfies also the other

prerequisites of judicial review.  For the reasons discussed above, *supra* 13–16, transferring

eligible people into prerelease custody plainly is not "committed to agency discretion by law."  5

U.S.C. § 701(a)(2).  Nor is there a statute that "preclude[s] judicial review."  *Id.* § 701(a)(1).

Regarding the BOP, Congress has instructed that the APA "do[es] not apply to the making of any

determination, decision, or order *under this subchapter*."  18 U.S.C. § 3625 (emphasis added).

The subchapter of which § 3625 is a part is subchapter C of chapter 229, which includes only

sections 3621–3626.  *See id.*  It does not include section 3632, the relevant section of the First

Act.  Although section 3624(g) sets forth prerequisites for an incarcerated person to be eligible for

transfer into prerelease custody under section 3632(d)(4)(C), Plaintiffs do not challenge any

"determination, decision, or order" under section 3624(g) or any other section in that subchapter.

*See supra* 18.  Plaintiffs do not dispute, for example, whether the BOP accurately determined their

eligibility under section 3624(g).  They instead challenge the BOP's refusal to transfer them into

prerelease custody under section 3632, which is outside the scope of the preclusion in section 3625.

Lastly, the BOP's refusal to transfer eligible people into prerelease custody constitutes the

BOP's "fail[ure] to take a *discrete* agency action that it is *required to take*."  *Norton*, 542 U.S. at

64 (emphasis in original).  The BOP's failure to transfer eligible people into prerelease custody is

comparable to an agency failing to "take some decision by a statutory deadline," *id.* at 63, because

the First Step Act requires the BOP to transfer "eligible prisoners," 18 U.S.C. § 3632(d)(4)(C),

and a prisoner is eligible when his or her earned time credits equal the remainder of that person's

prison sentence, *id.* § 3624(g)(1)(A).  *See Lewis*, 2024 WL 3566135, at *9 (holding that plaintiffs

plausibly alleged the United States Parole Commission (USPC) failed to take a discrete agency

action where "[t]he D.C. statute and USPC regulations plainly prescribe a deadline for scheduling

termination hearings, by which the USPC allegedly did not abide").  Plaintiffs' challenge is not an

attempt to enforce a "broad statutory mandate," *Norton*, 542 U.S. at 67, of the sort that courts have

rejected.  *See id.* at 65–67 (rejecting claim that statutory mandate to "manage [lands] . . . in a

manner so as not to impair the suitability of such areas for preservation as wilderness," 43 U.S.C.

§ 1782(c), was sufficiently clear and discrete to permit judicial enforcement).  "Rather, Plaintiffs

in this case seek to compel an agency to take the discrete and concrete action" of transferring

eligible people into prerelease custody as required by the First Step Act.  *Ramirez v. U.S. Immigr.

& Customs Enf't*, 310 F. Supp. 3d 7, 20–21 (D.D.C. 2018).  The BOP's refusal to do so is a

"particular 'agency action' that causes [Plaintiffs and putative class members] harm."  *Lujan v.

National Wildlife Federation,* 497 U.S. 871, 891 (1990).  And it is an action the BOP is "required

to take" under the First Step Act.  *Norton*, 542 U.S. at 64; *see supra* 13–16.

The Court therefore can require the BOP to transfer eligible people into prerelease custody

within the time required by the First Step Act pursuant to its authority to "compel agency action

unlawfully withheld" under the APA.  5 U.S.C. § 706(1).

**B.      Plaintiffs Are Likely To Succeed On Their Claim That The BOP's Regulation
Should Be Set Aside Under The Administrative Procedure Act.**

Plaintiffs also are likely to succeed on the merits of their claim that this Court should set

aside the BOP's regulation as unlawful under the APA, which instructs that a reviewing court

"shall . . . hold unlawful and set aside agency action" that is found to be "not in accordance with

law" or "in excess of statutory jurisdiction."  5 U.S.C. §§ 706(2)(A), 706(2)(C).  The BOP's

Regulation, which inexplicably and impermissibly substitutes "may" for "shall" with respect to

23

the application of earned time credits under the First Step Act, should be set aside under these provisions because it is not in accordance with the First Step Act and is in excess of BOP's statutory jurisdiction.

As with the BOP's refusal to transfer eligible people into prerelease custody as required by the First Step Act, its regulation—which expressly authorizes the BOP to so refuse—satisfies the prerequisites for judicial review under the APA. "An agency's promulgation of regulations constitutes a final agency action." *Environmental Health Trust v. F.C.C.*, 9 F.4th 893, 913 (D.C. Cir. 2021). The BOP's regulation bears all the hallmarks of a final agency action: It "mark[s] the consummation of the agency's decisionmaking process" as it is a final regulation the BOP promulgated pursuant to the notice-and-comment process and "is one by which rights or obligations have been determined" as it sets forth various rules regarding the application of First Step Act time credits. *See Corner Post*, 603 U.S. at 808; 28 C.F.R. § 523.44. No statute provides any "other adequate remedy in a court" for Plaintiffs' challenge to the regulation. 5 U.S.C. § 704. Nor is the regulation an action that was "committed to agency discretion by law," 5 U.S.C. § 701(a)(2)—to the contrary, the First Step Act explicitly *denies* the BOP any discretion with respect to the application of First Step Act time credits. 18 U.S.C. § 3632(d)(4)(C) ("[t]ime credits earned . . . *shall* be applied toward time in prerelease custody or supervised release") (emphasis added). And, 18 U.S.C. § 3625's bar on review under the APA does not apply to this facial challenge to the BOP's regulation, which does not concern "any determination, decision, or order" under sections 3621–3626. 18 U.S.C. § 3625; *see also supra* 18, 22.

Given that it is subject to judicial review under the APA, the regulation should be set aside because it "violates the statute's plain language." *E.E.O.C. v. Lutheran Soc. Servs.*, 186 F.3d 959, 962 (D.C. Cir. 1999). The regulation states that the BOP "*may* apply [First Step Act] Time Credits

toward prerelease custody or supervised release," 28 C.F.R. § 523.44, whereas the First Step Act provides that "[t]ime credits earned . . . *shall* be applied toward time in prerelease custody or supervised release[,]" 18 U.S.C. § 3632(d)(4)(C) (emphasis added). The regulation therefore "plainly contradicts the unambiguous text" of the First Step Act and should be vacated or set aside for that reason. *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 43 (D.D.C. 2020); *see also id.* at 50 ("[A]ccording to the D.C. Circuit, when a reviewing court declares that the challenged action of an administrative agency violates the law, vacatur is the 'normal remedy[.]'") (quoting *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014).

The regulation also is unlawful because it "exceed[s] the agency's statutory authority." *Truck Trailer Manufacturers Ass'n, Inc v. E.P.A.*, 17 F.4th 1198, 1201 (D.C. Cir. 2021); *see also Am. Bar Ass'n v. F.T.C.*, 430 F.3d 457, 466–67 (D.C. Cir. 2005) (affirming district court's decision that agency action was invalid because it exceeded agency's statutory authority). Congress has specified the ways in which the BOP shall implement the "risk and needs assessment system," which includes the "evidence-based recidivism reduction programming" that eligible incarcerated people can participate in to earn time credits. *See* 18 U.S.C. §§ 3632(a), (b); 18 U.S.C. § 3621(h) (implementation of risk and needs assessment system). Congress has not, however, granted the BOP the authority to rewrite the plain text of the First Step Act. As there is no provision in the First Step Act that permits the BOP to exercise discretion with respect to the application of time credits toward prerelease custody, the regulation exceeds the BOP's statutory authority.

Plaintiffs therefore are likely to succeed on the merits of their claim that the Court should set aside the BOP's regulation.

## II.    Plaintiffs And Putative Class Members Have Demonstrated Irreparable Harm.

Plaintiffs and putative class members are suffering and will continue to suffer irreparable

harm absent a preliminary injunction. The additional time Plaintiffs and putative class members are imprisoned past the dates when they were required to be moved to prerelease custody under the First Step Act is time they will never get back. Courts have found what could go without saying: That loss is irreparable. *See Ramirez v. Phillips*, 2023 WL 8878993, at *5 (E.D. Cal. Dec. 22, 2023) ("[P]etitioner has shown irreparable harm: if BOP unlawfully rescinded his [First Step Act] credits, the time he could have continued spending in prelease custody cannot be returned to him. . . . [E]very day he is incarcerated rather than serving the final portion of his sentence on prerelease custody or supervised release as mandated by the First Step Act results in irreparable injury; petitioner cannot get back the time he spends incarcerated."). This Court "will be unable to grant meaningful relief following trial," *Hanson v. District of Columbia*, 120 F.4th 223, 244 (D.C. Cir. 2024), because it cannot give back the time out of prison Plaintiffs and putative class members will lose absent injunctive relief now.

There also is inherent irreparable harm in unlawfully prolonged incarceration. "Courts in this and other jurisdictions have found that deprivations of physical liberty are the sort of actual and imminent injuries that constitute irreparable harm" and "have likewise recognized that the 'major hardship posed by needless prolonged detention' is a form of irreparable harm." *Ramirez*, 310 F. Supp. 3d at 31; *see also Seretse–Khama v. Ashcroft*, 215 F. Supp. 2d 37, 53 n.20 (D.D.C. 2002) (collecting cases). The fact that prerelease custody still imposes limits on a person's liberty makes no difference. "[W]here a plaintiff requests injunctive relief mandating that an agency comply with a process that, if completed[,] could secure plaintiff's freedom *or could alleviate harsh conditions of confinement*, the harm from detention surely cannot be remediated after the fact." *Ramirez*, 310 F. Supp. 3d at 31 (emphasis added).

Prerelease custody is meaningfully different from prison.  In prerelease custody, whether in a residential reentry center (halfway house) or in home confinement, people have substantially more freedom.  People placed in halfway houses, for example, generally are required to work full-time jobs and are permitted to leave for other activities such as visiting family, counseling, and recreation.[21]  *See Brennan v. Cunningham*, 813 F.2d 1, 5 (1st Cir. 1987) ("An inmate in a halfway house is granted a measure of liberty that lies between that of a parolee and that of an inmate incarcerated in prison. . . . [T]he prisoner in [a halfway house] enjoys some significant liberty[.]").  For people placed in home confinement, the contrast is even greater, as they are able to live with and help support their families and begin to reintegrate into their future lives more fully.  Indeed, "subject to the approval of the Director of the Bureau of Prisons," people placed in home confinement are able to leave home to "perform a job or job-related activities[,]" "perform community service[,]" "receive medical treatment[,]" attend religious activities[,]" and engage in other family- and community-based activities.  18 U.S.C. § 3624(g)(2)(A)(i).  Moving people into prerelease custody therefore would "alleviate harsh conditions of confinement," and the harm from staying in prison "surely cannot be remedied after the fact."  *Ramirez*, 310 F. Supp. 3d at 31.

Plaintiffs and putative class members are also experiencing irreparable harm in the forms of emotional distress and damage to their mental and physical wellbeing.  Ms. Crowe and Mr. Galemmo are suffering profoundly as a result of being held in prison longer than the First Step Act permits.  When Ms. Crowe learned that she would not be released until after the date on which the BOP's own records reflect she was entitled to release, she felt as though she "could not breathe"

---

[21] BOP, *About Our Facilities*, https://www.bop.gov/about/facilities/residential_reentry_manage ment_centers.jsp#:~:text=The%20BOP%20contracts%20with%20residential,activities%20durin g%20this%20readjustment%20phase (last accessed Jan. 12, 2025) (residential reentry centers provide "employment counseling, job placement, financial management assistance, and other programs and services").

and began "losing [her] strength." ECF No. 2-1, Crowe Decl. ¶¶ 17, 27. She has been "left with increasing emotional instability as the days wear on" and "it gets harder [for her] each day." *Id.* ¶ 32. The expected delay in Mr. Galemmo's transfer to prerelease custody similarly has taken an "emotional toll . . . [that] is immeasurable and continues to affect [his and his family's] collective mental well-being." ECF No. 2-2, Galemmo Decl. ¶ 5. By losing nearly three months he otherwise would spend in prerelease custody, Mr. Galemmo will miss being able to provide valuable financial and caregiving support to his family, *id.* ¶¶ 7, 9, and will experience further delay in the specialized medical care he needs for his chronic kidney condition that is unavailable to him in prison, *id.* ¶ 10.

The harm Plaintiffs and putative class members face therefore is "certain and great, [and] actual and not theoretical." *League of Women Voters v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (internal quotation marks and citation omitted). Furthermore, given that the BOP has told Plaintiffs and putative class members they will be moved to prerelease custody after the dates when their earned time credits equal the remainder of their sentences, the harm either is already occurring, as in the case of Ms. Crowe and certain putative class members discussed above, or, in the case of Mr. Galemmo, is "so imminen[t] that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (alteration in original) (internal quotation marks and citation omitted). And, for the reasons stated above, the harm is "beyond remediation." *Id.* (internal quotation marks and citation omitted).

## III.    The Public Interest And Balance Of Equities Favor Injunctive Relief.

The public interest and balance of equities "'merge when, as here, the Government is the opposing party.'" *Singh v. Berger*, 56 F.4th 88, 107 (D.C. Cir. 2022) (quoting *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020)); *see also Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500,

511 (D.C. Cir. 2016). Where the relief sought is squarely within the public interest, there can be no harm to the government. *See Pursuing Am.'s Greatness*, 831 F.3d at 511–12; *see also R.I.L.-R. v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) ("The Government cannot suffer harm from an injunction that merely ends an unlawful practice[.] . . . And, as courts in this District have recognized, [t]he public interest is served when administrative agencies comply with their obligations under the APA.") (internal quotation marks and citation omitted).

"There is generally no public interest in the perpetuation of an unlawful agency action." *League of Women Voters*, 838 F.3d at 12. "To the contrary, there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Id.* (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)); *see also Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977) ("[T]here is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate."). That is the case here. The BOP is violating the First Step Act by failing to transfer eligible people as the statute requires. The public interest is in ensuring that the BOP follows the law and gives effect to Congress's purpose in enacting the First Step Act.

Any potential burdens to the BOP are outweighed by the public interest in ensuring that the BOP follows the law and transfers people into prerelease custody within the time required by the First Step Act. The First Step Act has been the law since December 21, 2018. *See generally* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5196-5208 (2018), ECF No. 1-1, Ex. A to Compl. The BOP has had over *six years* to implement the law and comply with its directives, including those regarding the earned time credits system. Moreover, an analysis of the home confinement program under the 2020 CARES Act, which permitted the expansion of home confinement in the wake of the COVID-19 pandemic, shows that in Fiscal Year 2020, it cost

29

$120.59 per day to incarcerate a person in a federal facility, whereas "according to the [BOP], an inmate in home confinement costs an average of $55.26 per day."[22]  Congress has squarely placed on the BOP the responsibility to transfer eligible people into prerelease custody.  The BOP cannot reasonably argue that it would be harmed by being required to follow the law.

The public interest and equities therefore strongly favor Plaintiffs.

## IV.    Provisional Class Certification For Preliminary Injunction Purposes Is Warranted

This Court should provisionally certify the class as defined in Plaintiffs' motion for class certification, ECF No. 2, for purposes of preliminary injunctive relief: "All incarcerated people who have earned or will earn time credits under the First Step Act, who meet or will meet the prerequisites for prerelease custody in 18 U.S.C. § 3624(g)(1), and who have not been or will not be moved out of prison on or before the date when their time credits equal their remaining sentences."  ECF No. 2, Mtn. for Class Certification, at 1.

"Plaintiffs . . . need only provisional class certification in order for the Court to grant their preliminary injunction."  *Damus*, 313 F. Supp. 3d at 329.  Although "[i]n granting such provisional certification, the Court must still satisfy itself that the requirements of Rule 23 have been met," the Court's "analysis is tempered . . . by the understanding that such certifications may be altered or amended before the decision on the merits."  *Id*. (internal quotation marks and citation omitted).  This Court has provisionally certified class actions for purposes of granting a preliminary injunction on numerous occasions.  *See, e.g.*, *Charles H. v. District of Columbia*, 2021 WL 2946127, at *14 (D.D.C. June 16, 2021) (provisionally certifying class for purpose of granting

---

[22] Senator Cory A. Booker, *CARES Act Home Confinement Three Years Later*, June 2023, https://www.booker.senate.gov/imo/media/doc/cares_act_home_confinement_policy_brief1.pdf, at 9.

preliminary injunction); *Damus*, 313 F. Supp. 3d at 328–35 (same); *Kirwa*, 285 F. Supp. 3d at 44 (same); *R.I.L.-R.*, 80 F. Supp. 3d at 181 (same).

Plaintiffs' motion for class certification and accompanying exhibits, ECF Nos. 2-2 to -35, which are incorporated by reference here, demonstrate that the proposed class satisfies the requirements of Rule 23(a) and (b)(2). The class is sufficiently numerous, Fed. R. Civ. P. 23(a)(1), as it consists of tens of thousands of individuals similarly situated to Plaintiffs whom the BOP has not or will not transfer into prerelease custody within the time required by the First Step Act. ECF No. 2 (Mtn. for Class Certification) at 11–12. It satisfies the commonality requirement, Fed. R. Civ. P. 23(a)(2), given the key legal issues common to the class, including but not limited to whether the BOP is violating the First Step Act by failing to transfer eligible people into prerelease custody when their earned time credits equal the remainder of their sentences. ECF No. 2 (Mtn. for Class Certification) at 12–15. It satisfies also the typicality requirement, Fed. R. Civ. P. 23(a)(3), as Plaintiffs' claims arise from the same course of conduct responsible for the claims of putative class members, and the adequacy requirement, Fed. R. Civ. P. 23(a)(4), as Plaintiffs do not have any antagonistic or competing interests with unnamed members of the class. ECF No. 2 (Mtn. for Class Certification) at 15–17. Provisional class certification under Rule 23(b)(2) is appropriate because the BOP's failure to transfer eligible people as required by the First Step Act and its regulation apply to all putative class members, and the injunctive relief Plaintiffs seek would benefit the whole class. ECF No. 2 (Mtn. for Class Certification) at 18–19. And, Plaintiffs' counsel are qualified to serve as counsel for the provisionally certified class. *Id.* at 19–20.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should provisionally certify the Plaintiff class and grant the requested preliminary injunction as to Plaintiffs Crowe and Galemmo and the class.[23]

[signatures on following page]

---

[23] Because the entry of an injunction will not harm the Defendants, the security required by Fed. R. Civ. P. 65(c) should be set at zero. *See, e.g.*, *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) ("The language 'in such sum as the court deems proper' [in Rule 65(c)] has been read to vest broad discretion in the district court to determine the appropriate amount of an injunction bond."); *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) ("The district court retains discretion as to the amount of security required, if any." (cleaned up)); *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) ("[T]he district court did not abuse its discretion in dispensing with the bond[.]").

Dated: January 14, 2025

Respectfully submitted.

/s/ Elizabeth Henthorne
Elizabeth Henthorne (D.C. Bar No. 1562688)
Brantley A. Butcher** (D.C. Bar No. 90029703)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 637-6367
bhenthorne@jenner.com
bbutcher@jenner.com

/s/ Emma Andersson
Emma A. Andersson* (CA Bar No. 260637)
Julian Clark** (NY Bar No. 5824180)
American Civil Liberties Union Foundation
125 Broad St. – 18th Floor
New York, NY 10004
(212) 549-2500
eandersson@aclu.org
jclark@aclu.org

*Admitted pro hac vice.
**Application for admission pro hac
vice pending.

/s/ Aditi Shah
Aditi Shah***
Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
ashah@acludc.org
aspitzer@acludc.org
smichelman@acludc.org

***Admitted pro hac vice; not admitted in
DC; practice limited to matters before
federal courts and District of Columbia
agencies.

Attorneys for Plaintiffs and the Proposed
Class±

---

± Counsel wish to acknowledge the assistance of paralegals Clio Gates, Kenyon North, and Ameerah Adetoro in the preparation of this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 14th day of January, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.  Counsel for Plaintiffs will also cause a copy of the foregoing to be served via Federal Rule of Civil Procedure 5(b)(2)(E).

By: /s/ *Elizabeth Henthorne*
Elizabeth Henthorne