**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Vanessa CROWE and Glen GALEMMO, *individually and on behalf of all others similarly situated*

*Plaintiffs*,

v.

FEDERAL BUREAU OF PRISONS, *et al.*,

*Defendants*.

No. 1:24-cv-3582 (APM)

**PLAINTIFFS' COMBINED MEMORANDA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

SUMMARY OF ARGUMENT ..... 2

ARGUMENT ..... 5

I. Plaintiffs Had Standing Because They Faced a Substantial Risk That They Would Be Incarcerated Beyond the Day When Their First Step Act Time Credits Equaled the Remainder of Their Sentences ..... 5

II. Ms. Crowe's APA Claim and the Putative Class Action Are Not Moot. ..... 10

A. Ms. Crowe's APA Claim Is Not Moot. ..... 11

B. The Inherently Transitory Exception to Mootness Applies to the Putative Class Action. . ..... 12

C. The "Picking Off" Exception to Mootness Also Applies to the Putative Class Action. . ..... 15

III. Congress Has Not Barred Judicial Review of Plaintiffs' Claims ..... 17

A. Judicial Review Is Not Barred by § 3621(b) ..... 17

B. APA Review Is Not Barred by § 3625 ..... 21

IV. Plaintiffs Are Likely to Succeed on the Merits. ..... 22

A. Plaintiffs Are Likely to Succeed on the Merits of Their Claims That the BOP's Practice and Regulation Violate the First Step Act. ..... 22

1. "Shall" in § 3632(d)(4)(C) imposes a mandatory requirement on the BOP ..... 23

2. The BOP is required to apply time credits toward prerelease custody if they are not applied toward supervised release. ..... 28

B. The Court Has Inherent Equitable Power to Enjoin the BOP from Violating the First Step Act, and Defendants' Arguments Regarding *Ultra Vires* Are Misplaced ..... 33

C. Alternatively, This Court Can Compel the BOP to Transfer Eligible People as Required by the First Step Act Under § 706(1) of the APA. ..... 37

1. TRAC does not apply to Plaintiffs' "unlawfully withheld" agency action claim ..... 38

2. Even if TRAC did apply here, the TRAC factors favor Plaintiffs. 41

V. The Balance of Equities and Public Interest Favor Plaintiffs. ..... 43

CONCLUSION ..... 45

## TABLE OF AUTHORITIES

## CASES

*Am. Hosp. Ass'n v. Azar*,
964 F.3d 1230 (D.C. Cir. 2020) ........ 36

*Amador v. Andrews*,
655 F.3d 89 (2d Cir. 2011) ........ 14

*Anglers Conservation Network v. Pritzker*,
809 F.3d 664 (D.C. Cir. 2016) ........ 23, 24

*Arabzada v. Donis*,
725 F. Supp. 3d 1 (D.D.C. 2024) ........ 24, 27

**Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ........ 33, 34

*AT&T Corp. v. F.C.C.*,
369 F.3d 554 (D.C. Cir. 2004) ........ 32

**Attias v. Carefirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017) ........ 6

*Baxter Healthcare Corp. v. Weeks*,
643 F. Supp. 2d 111 (D.D.C. 2009) ........ 35

*Biodiversity Legal Found. v. Badgley*,
309 F.3d 1166 (9th Cir. 2002) ........ 40

*Briones-Pereyra v. Warden*,
2024 WL 4171380 (E.D. Cal. Sept. 12, 2024) ........ 19, 20

*Chafin v. Chafin*,
568 U.S. 165 (2013) ........ 11, 12

*Changji Esquel Textile Co. v. Raimondo*,
40 F.4th 716 (D.C. Cir. 2022) ........ 34

*City of Chicago v. Morales*,
527 U.S. 41 (1999) ........ 26

*City of Houston, Tex. v. Dep't of Hous. & Urb. Dev.*,
24 F.3d 1421 (D.C. Cir. 1994) ........ 11

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)......6

*Cmty. for Creative Non-Violence v. Unknown Agents of U.S. Marshals Serv.*,
791 F. Supp. 1 (D.D.C. 1992)......8

*Cobell v. Norton*,
240 F.3d 1081 (D.C. Cir. 2001)......40

*Cook v. Wiley*,
208 F.3d 1314 (11th Cir. 2000)......22

*Crown Castle Fiber, L.L.C. v. City of Pasadena*,
76 F.4th 425 (5th Cir. 2023)......37

*D.L. v. District of Columbia*,
302 F.R.D. 1 (D.D.C. 2013)......6, 14

*Dart v. United States*,
848 F.2d 217 (D.C. Cir. 1988)......35, 36

*DCH Reg'l Med. Ctr. v. Azar*,
952 F.3d 503 (D.C. Cir. 2019)......34

*Department of Commerce v. New York*,
588 U.S. 752 (2019)......6, 9

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*,
445 U.S. 326 (1980)......16

*Desai v. U.S. Citizenship & Immigr. Servs.*,
2021 WL 1110737 (D.D.C. Mar. 22, 2021)......42

*Fed. Express Corp. v. U.S. Dep't of Com.*,
39 F.4th 756, 763 (D.C. Cir. 2022)......34, 36

*Firebaugh Canal Co. v. United States*,
203 F.3d 568 (9th Cir. 2000)......24

*Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Hum. Servs.*,
830 F.3d 515 (D.C. Cir. 2016)......36

*Food & Water Watch*,
808 F.3d 905 (D.C. Cir. 2015)......6

*Forest Guardians v. Babbitt*,
174 F.3d 1178 (10th Cir. 1999)....................40, 41

*Fresno Cmty. Hosp. & Med. Ctr. v. Azar*,
370 F. Supp. 3d 139 (D.D.C. 2019)....................36

*Friends of The Earth, Bluewater Network Div. v. U.S. Dep't of Interior*,
478 F. Supp. 2d 11 (D.D.C. 2007)....................39

*Fristoe v. Thompson*,
144 F.3d 627 (10th Cir. 1998)....................22

*Gardner v. Grandolsky*,
585 F.3d 786 (3rd Cir. 2009)....................23

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013)....................15

*Gerstein v. Pugh*,
420 U.S. 103 (1975)....................12, 15

*Harriot v. Jamison*,
2025 WL 384556 (S.D.N.Y. Feb. 4, 2025)....................20

*Heckler v. Chaney*,
470 U.S. 821 (1985)....................26

*Hinton v. District of Columbia*,
567 F. Supp. 3d 30 (D.D.C. 2021)....................6

*Humane Soc'y of the U.S. v. Vilsack*,
797 F.3d 4 (D.C. Cir. 2015)....................6

*IBP, Inc. v. Alvarez*,
546 U.S. 21 (2005)....................25

*In re Barr Lab'ys, Inc.*,
930 F.2d 72 (D.C. Cir. 1991)....................41, 44

*In re Center for Auto Safety*,
793 F.2d 1346 (D.C. Cir. 1986)....................41, 42

*In re Idaho Conservation League*,
811 F.3d 502 (D.C. Cir. 2016)....................7

*In re Nat'l Nurses United*,
47 F.4th 746 (D.C. Cir. 2022) ........................................................................ 23

*In re Sealed Case*,
809 F.3d 672 (D.C. Cir. 2016) ........................................................................ 12

**J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) ........................................................ 12, 13, 14, 15

**Jasperson v. Fed. Bureau of Prisons*,
460 F. Supp. 2d 76 (D.D.C. 2006) ................................................................... 22

*Kirwa v. U.S. Dep't of Def.*,
285 F. Supp. 3d 21 (D.D.C. 2017) ................................................................... 40

*Knox v. Serv. Emps.*,
567 U.S. 298, 307 (2012) ................................................................................ 12

*Landry v. Hawk-Sawyer*,
123 F. Supp. 2d 17 (D.D.C. 2000) ................................................................... 22

*Leedom v. Kyne*,
358 U.S. 184 (1958) ........................................................................................ 34

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) ........................................................................................ 27

**Love v. Bureau of Prisons*,
2025 WL 105845 (D.D.C. Jan. 15, 2025) ............................................... 19, 21, 22

*Lucero v. Bureau of Collection Recovery, Inc.*,
639 F.3d 1239 (10th Cir. 2011) ...................................................................... 16

*Martin v. Gerlinski*,
133 F.3d 1076 (8th Cir. 1998) ........................................................................ 22

**Mathis v. U.S. Parole Comm'n*,
2024 WL 4056568 (D.D.C. Sept. 5, 2024) ............................................ 34, 36, 37

*McCord v. Maggio*,
910 F.2d 1248 (5th Cir. 1990) ........................................................................ 26

*Meachum v. Fano*,
427 U.S. 215 (1976) ........................................................................................ 21

*Mitchell v. Christopher*,
996 F.2d 375 (D.C. Cir. 1993) .... 35

*Mons v. McAleenan*,
2019 WL 4225322 (D.D.C. Sept. 5, 2019) .... 13

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) .... 5, 10

*Moore v. Urquhart*,
899 F.3d 1094 (9th Cir. 2018) .... 37

*Murphy v. Smith*,
583 U.S. 220 (2018) .... 24

*Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*,
26 F.4th 960 (D.C. Cir. 2022) .... 35

*New York Republican State Comm. v. Sec. & Exch. Comm'n,*
927 F.3d 499 (D.C. Cir. 2019) .... 9

*Nielson v. Preap*,
586 U.S. 392 (2019) .... 13

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .... 38

*Nyunt v. Chairman, Broad. Bd. of Governors*,
589 F.3d 445 (D.C. Cir. 2009) .... 36

*O'Bryan v. J. W. Cox*,
2021 WL 3932275 (D.S.D. Sept. 1, 2021) .... 25

*Obama v. Klayman*,
800 F.3d 559 (D.C. Cir. 2015) .... 9

*Olson v. Brown*,
594 F.3d 577 (7th Cir. 2010) .... 14

*Pate v. Fed. Bureau of Prisons*,
2021 WL 5038636 (D.D.C. Oct. 29, 2021) .... 39

*Pitts v. Terrible Herbst, Inc.*,
653 F.3d 1081 (9th Cir. 2011) .... 16

*Potarazu v. Warden, Fed. Corr. Inst. - Cumberland*,
2023 WL 6142990 (D. Md. Sept. 20, 2023).......................................................................45

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
551 U.S. 224 (2007).......................................................................................................26

*R.I.L.-R v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015) ..................................................................................13

*Ramirez v. Phillips*,
2023 WL 8878993 (E.D. Cal. Dec. 22, 2023)...................................................................25

*Reeb v. Thomas*,
636 F.3d 1224 (9th Cir. 2011).........................................................................................22

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999).......................................................................................................26

*Return Mail, Inc. v. United States Postal Serv.*,
587 U.S. 618 (2019).......................................................................................................26

*Richardson v. Bledsoe*,
829 F.3d 273 (3d Cir. 2016) ...................................................................................16, 17

*Richmond v. Scibana*,
387 F.3d 602 (7th Cir. 2004) ..........................................................................................22

*Sahaviriya Steel Indus. Pub. Co. v. United States*,
33 C.I.T. 140 (2009).......................................................................................................35

*Siddiqui v. Blinken*,
646 F. Supp. 3d 69 (D.D.C. 2022) ..................................................................................39

*Sierra Club v. Jewell*,
764 F.3d 1 (D.C. Cir. 2014)...............................................................................................7

*Skalka v. Kelly*,
246 F. Supp. 3d 147 (D.D.C. 2017).................................................................................39

*Skinner v. Switzer*,
562 U.S. 521 (2011).......................................................................................................38

**South Carolina v. United States*,
907 F.3d 742 (4th Cir. 2018) ...................................................................................39, 40, 41

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)........................................................................................5, 6

*Telecomms. Rsch. & Action Center v. FCC*,
750 F.2d 70 (D.C. Cir. 1984)............................................................................40, 44

*Thorpe v. District of Columbia*,
916 F. Supp. 2d 65 (D.D.C. 2013) ........................................................................14

*Torres v. Gutierrez*,
2024 WL 4182237 (D. Ariz. Sept. 13, 2024) ..........................................................20

*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005)...........................................................................................26

*U.S. Parole Comm'n v. Geraghty*,
445 U.S. 388, 407 (1980) ....................................................................................15

*United States v. Brodie*,
2024 WL 195250 (D.N.J. Jan. 18, 2024) ...............................................................25

**United States v. Epps*,
707 F.3d 337 (D.C. Cir. 2013).............................................................................12

*United States v. Johnson*,
529 U.S. 53 (2000)..............................................................................................12

*United States v. Monsanto*,
491 U.S. 600 (1989)............................................................................................24

*United States v. Phillips*,
853 F. App'x 623 (11th Cir. 2021).........................................................................22

*Vafaei v. U.S. Citizenship & Immigr. Servs.*,
2024 WL 1213394 (D.D.C. Mar. 21, 2024)..............................................................42

*Valladares v. Ray*,
2025 WL 595560 (4th Cir. Feb. 25, 2025)...............................................................25

*Wade v. Kirkland*,
118 F.3d 667 (9th Cir. 1997) ................................................................................14

*Wilson v. Gordon*,
822 F.3d 934 (6th Cir. 2016) ...................................................................15, 16, 17

*Zeidman v. J. Ray McDermott & Co.*,
651 F.2d 1030 (5th Cir. 1981)....................16

*Zivotofsky v. Sec'y of State*,
571 F.3d 1227 (D.C. Cir. 2009)....................24

**STATUTES**

18 U.S.C. § 3583....................12

18 U.S.C. § 3583(e)....................11

18 U.S.C. § 3621....................19

18 U.S.C. § 3621(b)....................3, 18, 20, 21, 28, 46

18 U.S.C. § 3621(b)(5)....................17, 18

18 U.S.C. § 3624....................32

18 U.S.C. § 3624(c)....................31

18 U.S.C. § 3624(c)(1)....................18, 27, 31

18 U.S.C. § 3624(c)(4)....................18, 20, 28

18 U.S.C. § 3624(g)....................18, 20, 24

18 U.S.C. § 3624(g)(1)(A)....................32

18 U.S.C. § 3624(g)(2)....................24

18 U.S.C. § 3624(g)(3)....................24, 29

18 U.S.C. § 3624(g)(4)....................32

18 U.S.C. § 3624(g)(10)....................21, 32

18 U.S.C. § 3624(g)(11)....................28, 43, 44, 46

18 U.S.C. § 3625....................3, 17, 21, 23

18 U.S.C. § 3632....................21

18 U.S.C. § 3632(d)....................18, 19, 20

18 U.S.C. § 3632(d)(4) ........................................ 25

18 U.S.C. § 3632(d)(4)(A) ........................................ 25

*18 U.S.C. § 3632(d)(4)(C) ........................................ 1, 4, 18, 20, 23, 27, 31, 32

18 U.S.C. §§ 3621(b)(1)–(5) ........................................ 19

18 U.S.C. §§ 3624(c)(2)–(3) ........................................ 32

18 U.S.C. §§ 3632(d)(4)(A)(i)–(ii) ........................................ 31

5 U.S.C. § 706(1) ........................................ 4, 36, 38, 40

5 U.S.C. § 706(2)(A) ........................................ 23, 35

5 U.S.C. § 706(2)(C) ........................................ 35

First Step Act of 2018, Pub. L. No. 115-391, Title VI, § 601, 132 Stat. 5194 (2018). ......... 19, 26

**OTHER AUTHORITIES**

164 Cong. Rec. 7745 (2018) (statement of Sen. Blumenthal) ........................................ 27

164 Cong. Rec. 7746 (2018) (statement of Sen. Cornyn) ........................................ 27

87 Fed. Reg. 2705, 2706 (2022) (statements of Sens. Whitehouse and Cornyn) ........................ 31

87 Fed. Reg. at 2709 (2022) (statement of the BOP) ........................................ 45

Senate Report No. 98-225 (1983) ........................................ 22

U.S. Department of Justice, Office of the Attorney General, *The First Step Act of 2018: Risk and Needs Assessment System – UPDATE* (Jan. 2020), https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf ........................................ 45

U.S. Department of Justice, *Executive Grant of Clemency* (Jan. 17, 2025), available at https://www.justice.gov/pardon/media/1385601/dl?inline ........................................ 12

**REGULATIONS**

28 C.F.R. § 523.44(a)(1) ........................................ 1, 33

28 C.F.R. § 523.44(b) ........................................ 33

**INTRODUCTION**

This case boils down to a simple question: Does "shall" mean "shall"? Congress passed the First Step Act of 2018 to encourage individuals to complete programs while incarcerated that are designed to further reduce their risk of recidivating. In recognition of the value of these programs, Congress mandated that eligible people who take part in these programs receive time credits to reduce their time spent in prison. Under the First Step Act, the Federal Bureau of Prisons ("BOP") must transfer eligible people from prison to a residential reentry center ("RRC" or "halfway house") or home confinement when their time credits equal the time remaining on their sentences. This congressional mandate is textually unambiguous: The First Step Act states that time credits "*shall* be applied toward time in prerelease custody or supervised relief," and the BOP "*shall* transfer eligible prisoners . . . into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added).

But the BOP is ignoring this statutory duty, both through its practice of refusing to transfer eligible people to prerelease custody and through an implementing regulation that impermissibly converts Congress's "shall" to a "may." *See* C.F.R. § 523.44(a)(1) ("[T]he Bureau *may* apply FSA Time Credits toward prerelease custody."). Knowing that the BOP's actions and regulation contravene the plain meaning of the statute, Defendants in their brief attempt various jurisdictional arguments to prevent this Court from addressing the BOP's illegal regulation and actions. When forced to address the merits, Defendants can only argue that the statutory language does not mean what it says: that "shall" means "may," and that the BOP has complete discretion to overhold thousands of people beyond when the First Step Act mandates their transfer from prison to less restrictive custody.

For the people the BOP is or will be overholding, the difference of weeks or months between their First Step Act-mandated transfer date and the date the BOP decides to transfer them is irrevocable time lost. For named plaintiff Vanessa Crowe, the difference in dates was whether she got to spend Christmas with her three children and two-year-old granddaughter. For named plaintiff Glen Galemmo, the difference in dates was whether he would have to wait an additional three months to receive good medical care for a chronic kidney condition. For the three putative class members named in the complaint (ECF 1 (Complaint) at 10–11) who *continue* to be overheld—Richard Rudisill, Danyell Roberts, and Richard Armbre Williams—and the thousands of other people in federal prisons who are or will be overheld, the difference in dates is time they cannot spend reconnecting with family, earning income, and reintegrating back into their communities.

This Court should correct this ongoing violation of the First Step Act by denying Defendants' motion to dismiss and granting Plaintiffs' motion for provisional class certification and a preliminary injunction.

## SUMMARY OF ARGUMENT

Defendants' arguments that this Court lacks jurisdiction to decide this case are incorrect. Plaintiffs had standing to bring this lawsuit, the claims are not moot, and no statutes strip this Court of jurisdiction.

The named Plaintiffs had standing to bring this suit when it was filed. The BOP, through official and unofficial communications, repeatedly and in no uncertain terms told Ms. Crowe and Mr. Galemmo that they would not be transferred to a halfway house or home confinement when their First Step Act time credits equaled the remainder of their sentences. The BOP's statements and documentation created a "substantial risk" that Ms. Crowe and Mr. Galemmo would be

overheld—a risk that was realized when the BOP overheld Ms. Crowe by more than three weeks. This substantial risk of injury established standing.

The claims of Ms. Crowe and the putative class are also not moot. This Court can still grant Ms. Crowe effective relief because a favorable decision would help her to seek a reduction of her time in supervised release based on the time she was illegally overheld. But even if the BOP has mooted Ms. Crowe's individual claim, claims of being overheld in prison under the First Step Act are inherently transitory because they are temporally limited and it is inherently uncertain how long they will persist. The BOP exemplified this limited time duration and inherent uncertainty when it moved forward Ms. Crowe's and Mr. Galemmo's transfer dates after this suit was filed. Because class members, including three of the putative class members named in the complaint, maintain their claims, the inherently transitory exception to mootness applies. In the alternative, the "picking off" exception to mootness applies because the BOP, through irregular processes, attempted to "pick off" named Plaintiffs from the class, after months of denying their official requests to change their BOP-generated anticipated transfer date. These attempts to manipulate this Court's jurisdiction are insufficient to moot the class's claim.

Defendants' arguments that 18 U.S.C. §§ 3621(b) and 3625 prevent this Court from reviewing the BOP's decision about whether to comply with the First Step Act are similarly unavailing. Defendants fundamentally misconstrue the § 3621(b) jurisdiction-stripping bar: The statute bars judicial review of *where* someone is transferred, not *whether* someone is transferred from prison to less restrictive custody. Defendants' argument under § 3625 similarly fails. Plaintiffs' claims fall under a provision in a subchapter to which the § 3625 bar does not apply. But even if it did, Plaintiffs are challenging the BOP's regulation and practice, not an individualized housing determination. Challenges to policies are not barred by § 3625.

Defendants' arguments on the merits fare no better. Defendants argue that the BOP is not violating the First Step Act because the statute does not mandate that it transfer people to halfway houses or home confinement when their First Step Act time credits equal the remainder of their sentence. But Defendants cannot sidestep the textual barrier in the way of their preferred interpretation: The First Step Act requires that time credits "*shall* be applied toward time in prerelease custody or supervised relief," and the BOP "*shall* transfer eligible prisoners . . . into prerelease custody or supervised relief." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). Defendants fail to present a convincing argument as to why "shall" should not carry its presumptive mandatory meaning.

Defendants' attempts to attack this Court's power to grant relief similarly fail. This Court can enjoin the BOP's unlawful practice and regulation both under its inherent equitable power and under the Administrative Procedure Act ("APA"). Defendants mistake Plaintiffs' inherent equitable power argument for an *ultra vires* claim, but Plaintiffs have consistently argued that the BOP is violating the First Step Act, not that the BOP is surpassing the limits of its authority under its organic statute. This Court, under its inherent equitable power, can enjoin federal agencies and officials from violating the law. Alternatively, this Court can grant relief under the APA because the BOP's failure to transfer eligible people as required by the First Step Act is agency action unlawfully withheld under § 706(1) of the APA.

Plaintiffs have also met their burden to establish that a preliminary injunction should be granted. Plaintiffs are likely to succeed on the merits because their interpretation of the First Step Act is textually superior. Defendants have not contested that putative class members are suffering and will suffer irreparable harm by being overheld in prison. Defendants only argue that the balance of equities lies in their favor due to allegedly insufficient halfway house and home

confinement capacity. But Defendants cannot use their purported, but self-inflicted, injury—a failure to obtain sufficient halfway house and home confinement capacity—as an excuse to overhold thousands of people in prison. Congress specifically instructed the BOP to assure adequate capacity, and the BOP has had *years* to do so. Given the severity and scope of the harm caused to people who are being overheld in prison, the balance of equities and the public interest weigh in favor of transferring class members at the statutorily appointed time.

For these reasons, this Court should deny Defendants' motion to dismiss, provisionally certify the class, and grant the requested preliminary injunction as to the class.

## **ARGUMENT**

### I. Plaintiffs Had Standing Because They Faced a Substantial Risk That They Would Be Incarcerated Beyond the Day When Their First Step Act Time Credits Equaled the Remainder of Their Sentences.

Both Ms. Crowe and Mr. Galemmo had standing to bring this suit when the complaint was filed. Based on the BOP's own statements and documentation, it is clear that but for this litigation, the BOP would not have transferred either Ms. Crowe or Mr. Galemmo to prerelease custody when required by law (*i.e.*, when their First Step Act time credits equaled the remainder of their sentences). This substantial risk of injury was realized when Ms. Crowe was transferred on January 15, 2025, more than three weeks after her First Step Act time credits equaled the remainder of her sentence. Defendants' only response is that Plaintiffs' injuries were too speculative because "a chain of possibilities stood between [Ms. Crowe and Mr. Galemmo] and their anticipated injury." ECF 34 (Defs. Br.) at 11. But it is the Defendants' "chain of possibilities" that is too speculative.

To have standing, "the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable

ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). An imminent injury is one that is either "certainly impending" or there is a "substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). At the pleadings stage, a plaintiff need only "state a plausible claim" that each of the standing elements is present. *Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017) (citing *Food & Water Watch*, 808 F.3d 905, 913 (D.C. Cir. 2015) and *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015)). While "[e]vents subsequent to the filing of the complaint may moot the plaintiffs' claims," in those circumstances, the plaintiffs "do not lose standing," which is "assessed as of the time a suit commences." *Hinton v. District of Columbia*, 567 F. Supp. 3d 30, 48 (D.D.C. 2021) (quoting *D.L. v. District of Columbia*, 302 F.R.D. 1, 19 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017)).

Defendants do not contest that Plaintiffs' injuries are traceable to the BOP or that the injuries are redressable by this Court, instead arguing only that Plaintiffs have not shown injury in fact because at the time the complaint was filed, their First Step Act Earned Time Credits did not yet equal the remainder of their sentences. According to Defendants, Plaintiffs cannot rely on a mismatch between their BOP-generated anticipated transfer date and their BOP-generated First Step Act Conditional Placement Date because any injury stemming from that mismatch cannot be "certainly impending" given a "possibility" the latter date might change, and that the BOP might change the former date. ECF 34 (Defs. Br.) at 15–16 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Defendants put all their eggs in the "certainly impending" basket, without acknowledging that the proper test includes not only "certainly impending" harms but also situations where, as here, there was a "substantial risk that the harm would occur." *See Attias*, 865 F.3d at626 (citing *Clapper*, 568 U.S. at 410, 414 n.5); *see also Department of Commerce v. New York*, 588 U.S. 752,

767 (2019) (plurality op.); *Susan B. Anthony List*, 573 U.S. at 158. Plaintiffs have established standing because each of them faced a substantial risk that the BOP would fail to comply with the law and cause them the harm of being overheld in prison—and in the case of Ms. Crowe, did in fact fail and did in fact overhold her. *See, e.g.*, *In re Idaho Conservation League*, 811 F.3d 502, 509 (D.C. Cir. 2016) ("significant risk" that a mine would continue to be built and the plaintiff's "reasonabl[e] fears" that discharge would not be cleaned in the future was an injury in fact); *Sierra Club v. Jewell*, 764 F.3d 1, 8 (D.C. Cir. 2014) (statements by the defendant in combination with its indicative actions were sufficient to establish standing).

The BOP's own communications with Plaintiffs show that when the complaint was filed, there was a substantial risk the BOP would not transfer Plaintiffs to prerelease custody when their First Step Act time credits would equal the remainder of their sentences. Both Ms. Crowe and Mr. Galemmo had filed grievances and appeals of those grievances based on their BOP-generated anticipated transfer dates being set far beyond their "equal to" dates. Crowe New Date Declaration at ¶ 2; Crowe Exhaustion Declaration at ¶¶ 2, 6, 9–11, 14, 16–17, 20–23, 25–26, 29; Galemmo Exhaustion Declaration at ¶¶ 3–6, 8–17; Galemmo New Date Declaration at ¶¶ 4–5. The BOP, in its official and unofficial responses to Ms. Crowe's and Mr. Galemmo's grievances and appeals, repeatedly and in no uncertain terms told them their transfer dates would not change. *See* Crowe New Date Decl. at ¶¶ 2–3; Crowe Exh. Decl. at ¶¶ 4–8, 10, 12, 14, 17, 20, 22–24, 27–30; Galemmo New Date Decl. at ¶ 4; Galemmo Exh. Decl. at ¶¶ 3–8, 17. For example, Ms. Crowe spoke with her prison camp administrator twice a week over the course of months about correcting her anticipated transfer date to match her "equal to" date, and was told that "no matter what dates were on the First Step Act worksheet, there was nothing that [the camp administrator] could do to move [Ms. Crowe's] date, and [Ms. Crowe] would not get a new date." Crowe New Date Decl. at ¶ 3.

Defendants concede that Plaintiffs had exhausted their remedies. ECF 34 (Defs. Br.) at 9. If the BOP was going to comply with the First Step Act, Plaintiffs gave them ample opportunities to state as much before filing this lawsuit. Plaintiffs' reliance on the BOP's own clear statements in their individual grievance proceedings and in the BOP-generated anticipated transfer and Conditional Placement dates was entirely reasonable, and it gave Plaintiffs standing to file this lawsuit to force the BOP to comply with the First Step Act. *See Cmty. for Creative Non-Violence v. Unknown Agents of U.S. Marshals Serv.*, 791 F. Supp. 1, 4–5 (D.D.C. 1992) (holding that plaintiffs had standing to enjoin future actions based on agency's official statements).

For Ms. Crowe, the risk that the BOP would hold her beyond when her First Step Act credits equaled the remainder of her sentence was particularly substantial. The complaint in this case was filed on December 20, *four days* before her time credits equaled the remainder of her sentence. At that time, her BOP-generated transfer date was still May 7, 2025. ECF 1 (Compl.) at 2. The substantial risk that Ms. Crowe would be overheld and not transferred to a halfway house by Christmas Eve proved well-founded: While her transfer date was moved up—*after this case was filed*—she still was not transferred until January 15, 2025. *See* ECF 34 (Defs. Br.) at 8.

Even after *actually overholding* Ms. Crowe, Defendants still somehow claim that Plaintiffs' injuries were too speculative because they relied on a "chain of possibilities." *Id.* at 15. This supposed "chain" consists of:

> (1) stay[ing] in FSA time credit earning status until their eligibility date;
> (2) not incur[ring] any time credit reductions through penalties;
> (3) hav[ing] a recidivism risk rating of minimum or low at the time [their] FSA time credits equal the time remaining on [their] sentence; and
> (4) hav[ing] BOP fail to transfer [them] to prerelease custody on or before their eligibility date.

*Id.* at 15.

Defendants' supposed "chain of possibilities" is undercut by Plaintiffs' well-pleaded factual allegations and insufficient to defeat Plaintiffs' standing. *See* ECF 1 (Compl.) at 9–12. Of the three parts of the "chain" within Plaintiffs' control, none are appropriately categorized as mere "possibilities," as they are all supported by an unbroken six-year track record. At the time the complaint was filed, both Plaintiffs had been in First Step Act time credit earning status for almost six years. *See* ECF 2 (Mot. for Class Cert.), Exs. 5, 8. Neither had ever received time credit reductions through penalties. *Id*. (showing uninterrupted earning of First Step Act credits and no disallowed program days). Ms. Crowe had maintained a recidivism risk rating of low and Mr. Galemmo of minimum since December 2018, when the First Step Act went into effect. ECF 1 (Compl.) at 2. In short, if Plaintiffs simply continued their pattern of conduct—a pattern established over the course of *six* unbroken years—their First Step Act Conditional Placement Dates would not change. There was thus a "substantial risk" that the mismatch with their anticipated transfer dates would lead to them being overheld and cause them harm—again, as it actually did for Ms. Crowe.

This single inference based in fact—that Plaintiffs' established conduct would not change over the course of four days or two months, respectively—is not the sort of "chain of possibilities" that can defeat standing. *See Obama v. Klayman*, 800 F.3d 559, 564 (D.C. Cir. 2015) (per curiam) ("[W]here the *Clapper* plaintiffs relied on speculation and conjecture to press their claim, here, plaintiffs offer an inference derived from known facts."); *New York Republican State Comm. v. Sec. & Exch. Comm'n,* 927 F.3d 499, 504–05 (D.C. Cir. 2019) (holding a single inference does not defeat a finding of substantial risk for standing purposes); *see also Department of Commerce*, 588 U.S. at 766–68 (holding that plaintiffs had standing to bring challenge to census question based on evidence showing "predictable effects" of a government policy).

This leaves Defendants with only the fourth link in its purported "chain of possibilities": that the BOP would fail to transfer Plaintiffs on time. However, as discussed, the BOP overholding Ms. Crowe and Mr. Galemmo at the time this suit was filed was not speculative because the BOP *specifically told them* it would not transfer them on time. *Supra* at 9–10. Moreover, the BOP continues to this day to overhold three putative class members named in the complaint—Richard Rudisill, Danyell Roberts, and Richard Armbre Williams—whose time credits are *greater* than the remainder of their sentences, which further demonstrates the substantial and very real risk of being overheld at the time the complaint was filed. ECF 1 (Compl.) at 10–11; Butcher Decl. Exs. 1–3 ("Find an Inmate" screenshots).

Defendants cannot defeat standing merely because they can imagine futures—no matter how unlikely—in which the BOP would not cause Plaintiffs injury. Rank speculation that Plaintiffs might commit assault the day before their transfer date or that their recidivism risk would suddenly change after six years is both absurd and insufficient to defeat standing. If that were sufficient, defendants in *Monsanto* could have defeated standing based on the possibility that a tornado might come and wipe out farmers' crops. 561 U.S. 139. That is not the law. *See id.* at 153–55 (holding that farmers had standing to sue before their crops were planted even though it was impossible to know with certainty that their crops would be planted). Standing analysis is a legal exercise, not a creative writing assignment. Because there was a substantial risk that Plaintiffs would be overheld, they had standing when this suit was filed.

**II. Ms. Crowe's APA Claim and the Putative Class Action Are Not Moot.**

Defendants also claim this case is moot because after this lawsuit was filed, the BOP transferred Ms. Crowe to a halfway house and moved up Mr. Galemmo's transfer date to equal his First Step Act Conditional Placement Date. ECF 34 (Defs. Br.) at 17. Defendants are wrong. Ms.

Crowe maintains her individual APA claim. And Defendants cannot manipulate this Court's jurisdiction to moot the putative class's claims because the inherently transitory and "picking off" exceptions to mootness both apply here, and either one of them alone is sufficient to allow the case to proceed.

At the outset, it is worth noting Defendants' inconsistency in their arguments regarding the anticipated transfer dates. To argue against standing, Defendants included as a supposed link in their "chain of possibilities" that the BOP would not transfer Mr. Galemmo on the date that the *BOP itself* told him he would be transferred. ECF 34 (Defs. Br.) at 15. Then to try to assert mootness, Defendants claimed the BOP could *guarantee* that Mr. Galemmo—and presumably every other putative class member—would be transferred on the date it promised. *Id.* at 17. This "heads we win, tails you lose" strategy is representative of the capricious approach BOP takes to First Step Act time credits: When it suits them to properly apply the credits, they may choose to do so; when it does not, people are illegally overheld in prison.

**A. Ms. Crowe's APA Claim Is Not Moot.**

Ms. Crowe's APA claim is not moot merely because the BOP transferred her to a halfway house before filing its motion to dismiss. A case becomes moot when the issues are not "live," meaning that "'it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012)). This Circuit has made clear that a "challenge to [an agency's] policy is not necessarily mooted merely because the challenge to the particular agency action is moot." *City of Houston, Tex. v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1428 (D.C. Cir. 1994).

The BOP overheld Ms. Crowe by three weeks. *See* ECF 34 (Defs. Br.) at 8. Under 18 U.S.C. § 3583(e), Ms. Crowe may request that her sentencing court reduce her term of supervised

release to account for the injustice of the BOP over-incarcerating her.[1] *See also United States v. Johnson*, 529 U.S. 53, 60 (2000). Vacatur of the regulation and a declaration that BOP's administration of the earned time credit program violates the First Step Act would be compelling support for Ms. Crowe's motion to reduce her term of supervised release. Because a declaration that BOP's policy is illegal would enhance Ms. Crowe's prospects of a reduced term of supervised release, this Court can still grant her effective relief in this suit. *See Chafin*, 568 U.S. at 172. Accordingly, Ms. Crowe's APA claim is not moot. *See United States v. Epps,* 707 F.3d 337, 345 (D.C. Cir. 2013) (endorsing the proposition that "enhanced prospects for a reduced term of supervised release under § 3583 [is] adequate to hold non-moot a released prisoner's claim to a lesser period of incarceration"); *see In re Sealed Case*, 809 F.3d 672, 674 (D.C. Cir. 2016) (same).

### B. The Inherently Transitory Exception to Mootness Applies to the Putative Class Action.

Defendants fail entirely to address the relevant question of class action mootness. The Supreme Court has held that if the claims of a class representative are mooted after a class certification motion is filed but before a district court certifies a class, the class claims may proceed if they are "inherently transitory." *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (mooting the class representative's individual claim does not moot the class claims because the status of being a pretrial detainee is inherently transitory).

The D.C. Circuit applied this standard in *J.D. v. Azar*, in which plaintiffs brought a class action on behalf of unaccompanied noncitizen minors seeking abortions while in the custody of the Office of Refugee Resettlement ("ORR"). 925 F.3d 1291 (D.C. Cir. 2019). The putative class

---

[1] Independent of this case, Ms. Crowe's sentence was commuted on January 17, 2025. This commutation "leave[s] intact and in effect the term of supervised release imposed by the court." U.S. Department of Justice, Executive Grant of Clemency (Jan. 17, 2025), available at https://www.justice.gov/pardon/media/1385601/dl?inline, p. 11–12.

representatives either received access to reproductive care or were removed from ORR custody, thus mooting their individual claims, before the decision on class certification. *Id.* at 1303–05. Even though the class representatives' claims were moot, the D.C. Circuit held that a "faithful application of the Supreme Court's precedents" required applying the inherently transitory exception to allow the class action to proceed. *Id.* at 1312.

To apply the inherently transitory exception, courts assess: "(i) whether the individual claim might end before the district court has a reasonable amount of time to decide class certification, and (ii) whether some class members will retain a live claim at every stage of litigation." *Id.* at 1311. Both conditions are satisfied here.

The first prong clearly applies to the claims of the proposed class. As laid out in the complaint, proposed class members are being held in prison between three and twelve months beyond their statutorily mandated transfer date. ECF 1 (Compl.) at 14 (citing congressional testimony of BOP Director); *id.* at 10–12. These timeframes fit squarely within this Court's prior decisions applying the inherently transitory exception. *See, e.g.*, *J.D.*, 925 F.3d at 1311 (explaining that just as "one-year immigration detention . . . would end too soon, so too would a full term of pregnancy") (citing *Nielson v. Preap*, 586 U.S. 392, 404 (2019) (plurality op.)); *Mons v. McAleenan*, 2019 WL 4225322, at *7 (D.D.C. Sept. 5, 2019) (applying exception to claims that "most likely" remained live for a maximum of six months); *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 183 (D.D.C. 2015) (detention lasting "weeks or months" was "too short for a court to be expected to rule on a certification motion"); *D.L. v. District of Columbia*, 302 F.R.D. 1, 20 (D.D.C. 2013) (applying "inherently transitory" exception to IDEA claims that only applied while children were aged three to five).

Indeed, this scenario has already occurred: The BOP transferred both named Plaintiffs after they filed this suit but before this Court had a reasonable amount of time to rule on class certification. And because the BOP has full control over when class members' claims will be mooted, this is an even clearer-cut case in which to apply the exception than *J.D.*, where individual claims were mooted through reproductive care and age-based constraints, rather than defendants' actions.

The ease with which BOP accelerated both named Plaintiffs' scheduled transfer dates, *see* Crowe New Date Decl. at ¶ 4; Galemmo New Date Decl. at ¶¶ 1–3, demonstrates the inherent uncertainty created *by the BOP* in how long putative class members will be held in prison. Courts have found that uncertainty about when a person may be released from detention is further evidence that a claim is inherently transitory. *See, e.g.*, *Amador v. Andrews*, 655 F.3d 89, 101 (2d Cir. 2011) (applying the inherently transitory exception to a class of people in state prisons because "the odds of an inmate being able to complete the grievance procedure [to exhaust administrative remedies] and litigate a class action while still incarcerated are rather small"); *Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997) (similar application of inherently transitory exception to individuals in jails); *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010) (same); *see also Thorpe v. District of Columbia*, 916 F. Supp. 2d 65, 67 (D.D.C. 2013) (similar application of inherently transitory exception to residents of nursing home facilities).

The second prong of the inherently transitory analysis also clearly applies to the claims of the proposed class. Putative class members retain live claims as of this filing and will retain live claims throughout the life of the litigation, ensuring "the constant existence of a class of persons suffering the deprivation." *Gerstein*, 420 U.S. 103, 111 n.11 (1975); *see also J.D.*, 925 F.3d at 1311–12. Indeed, three of the putative class members mentioned in the complaint—Richard

Rudisill, Danyell Roberts, and Richard Armbre Williams—continue to be overheld, a fact Defendants conveniently overlook in their motion to dismiss. ECF 1 (Compl.) at 10–11; Butcher Decl. Ex. 1–3 ("Find an Inmate" screenshots). Additionally, the BOP Director state in sworn congressional testimony that up to 60,000 individuals could be facing 3-12 month delays in transfer to First Step Act prerelease custody, ECF 1 (Compl.) at 14, and Defendants have not claimed that BOP has changed its policy to remove these delays.

Because both prongs of the inherently transitory standard are met, this Court can "relate back" certification of the class to the date when the complaint was filed. *See J.D.*, 925 F.3d at 241 ("'[W]here a named plaintiff's claim is 'inherently transitory,' and becomes moot prior to certification, a motion for certification may 'relate back' to the filing of the complaint.'" (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 n.2 (2013)). Ms. Crowe's and Mr. Galemmo's claims were not moot at the time this suit was filed, and thus this proposed class action is not moot under the inherently transitory exception. And because the inherently transitory exception applies, Ms. Crowe and Mr. Galemmo can continue to serve as class representatives. *See J.D.*, 925 F.3d at 1313 ("[P]laintiffs with moot claims may adequately represent a class.") (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 407 (1980)).

### C. The "Picking Off" Exception to Mootness Also Applies to the Putative Class Action.

The "picking off" exception to mootness also applies here. This exception applies when "a defendant picks off named plaintiffs in a class action before the class is certified" by "strategically mooting named plaintiffs' claims in an attempt to avoid a class action." *Wilson v. Gordon*, 822 F.3d 934, 947 (6th Cir. 2016).

The doctrine arises from *Deposit Guaranty National Bank v. Roper*, in which a defendant attempted to buy off the class representatives, thus mooting their claims, in an attempt to moot the

case. 445 U.S. 326, 339 (1980). The Supreme Court held that defendants cannot use such "picking off" tactics to moot a case. *Id.* Its reasoning was prudential: "Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant[]" would "waste . . . judicial resources" and "frustrate the objectives of class actions." *Id.* Several Circuits have since applied this standard or a substantively similar standard. *See Richardson v. Bledsoe,* 829 F.3d 273, 279 (3d Cir. 2016) (applying the picking off exception when the named class representative was transferred out of a penitentiary before the class was certified); *Wilson*, 822 F.3d at 947–52; *see also Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1250 (10th Cir. 2011) (applying picking off exception when defendant offered full amount of requested relief to named plaintiff before class certification); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011) (same); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050 (5th Cir. 1981) (same).

The BOP's actions show it is attempting to moot this lawsuit by "picking off" class representatives. Ms. Crowe and Mr. Galemmo had each filed a grievance with the BOP and exhausted their appeals before filing this suit. The BOP previously (and repeatedly) refused to match Plaintiffs' anticipated transfer dates with their "equal to" dates, as required by law. Yet within two weeks after this suit was filed, and before the BOP even filed its motion to dismiss, it moved up Ms. Crowe's transfer date by several months, ECF 34 (Defs. Br.) at 8; Crowe New Date Decl. at ¶ 4, and shortly thereafter moved up Mr. Galemmo's transfer date, again by several months, ECF 34 (Defs. Br.) at 8–9; Galemmo New Date Decl. at ¶ 3.

Ms. Crowe, in her third declaration, describes abnormalities in the BOP's process for transferring her after the filing of this lawsuit. A secretary at the prison told Ms. Crowe in January 2025 that she had never seen halfway house paperwork signed and processed as quickly as Ms. Crowe's; the paperwork was signed and processed in a single day when it usually takes two weeks.

Crowe New Date Decl. at ¶ 4. The BOP similarly took on a new and vigorous interest in assuring Mr. Galemmo was not overheld: After months of denying his grievances and appeals, the BOP moved Mr. Galemmo's transfer date up *twice* after this suit was filed. Galemmo Exhaustion Decl. at ¶¶ 3–8, 17; Galemmo New Date Decl. at ¶¶ 3–4. His transfer dates were moved up only after an attorney from BOP's Central Office contacted Mr. Galemmo's unit manager. Galemmo New Date Decl. at ¶¶ 1–2. The BOP's swift and unusual action after the filing of this lawsuit indicates that it was trying to pick off representative class members in an attempt to moot this class action.

This Court should not allow the BOP to manipulate its jurisdiction and should relate back the liveness of this putative class action to the filing of the complaint. *See Wilson*, 822 F.3d at 948 (relating back to filing of complaint); *Richardson*, 829 F.3d at 286 (same).

### III. Congress Has Not Barred Judicial Review of Plaintiffs' Claims

Plaintiffs challenge the BOP's policy of not applying First Step Act Earned Time Credits as required by law. That policy is evidenced both in BOP's regulation—which improperly replaces the statutory term "shall" with the permissive "may"—and in its practice of not transferring eligible people at the statutorily prescribed time. ECF 16 (Pls. Br.) at 5–9, 13–16. This challenge is not precluded by the jurisdiction-stripping provisions in §§ 3621(b)(5) and 3625.

#### A. Judicial Review Is Not Barred by § 3621(b).

As explained in Plaintiffs' motion for a preliminary injunction, ECF 16 (Pls. Br.) at 5–9, 13–16, and further in Sections (IV)(A)–(B) , *infra* at 22–37, Congress could not have been clearer in the First Step Act: Once an "eligible prisoner" has met the requirements for transfer to prerelease custody or supervised release, the BOP "shall transfer" that prisoner. 18 U.S.C. § 3632(d)(4)(C).

This distinct statutory command makes clear that—unlike in other contexts—BOP has no discretion under the First Step Act about *whether* to transfer someone to prerelease custody once they are eligible. *Compare* the Second Chance Act (18 U.S.C. § 3624(c)(1) ("The [BOP] 'shall,

*to the extent practicable*,' move people into prerelease custody."); *with* the First Step Act (18 U.S.C. § 3632(d)(4)(C) ("Time credits earned . . . *shall* be applied toward time in prerelease custody."); *id.* ("The [BOP] . . . *shall* transfer eligible prisoners . . . into prerelease custody or supervised release."); *compare also* 18 U.S.C. § 3624(c)(4) ("Nothing in this subsection shall be construed to limit or restrict the authority of the [BOP] under section 3621.") (emphasis added), *with id.* 3624(g) (no such provision); *see also* ECF 16 (Pls. Br.) at 14–15. Because § 3632(d) requires the BOP to transfer people out of prison once eligible, there is no discretion for the BOP to exercise and § 3621(b)'s jurisdictional bar is not applicable here.

Section 3632(d) says nothing about the BOP's decision of *where* to transfer someone (*i.e.*, "a designation of a place of imprisonment"), and thus does not displace BOP's discretion on that score. In other words, the BOP retains its discretion to decide *which* halfway house a person should be transferred to or to decide *between* a halfway house and home confinement. And that makes sense, as such decisions must take into account a number of specifically enumerated considerations laid out in the statute. *See* 18 U.S.C. § 3621(b) (requiring the BOP to take into account, *inter alia*, "bed availability," "programmatic needs," and "faith-based needs"); *id.* (b)(1)–(5) (listing considerations such as "the resources of the facility contemplated" and "statement[s] by the court that imposed the sentence recommending a type of . . . facility as appropriate"). Judicial review of discretionary § 3621(b) placement decisions would require a court to itself analyze the statutory considerations and the BOP's weighing of them—considerations that Congress has determined the BOP is in the best position to analyze, hence the prohibition on judicial review of decisions about *which* facility a person shall be placed in. The fact that, as Defendants note, the judicial review bar was added in the First Step Act does not change the conclusion that the bar applies to decisions about *where* to transfer someone.

Here, by contrast, and as in this Court's decision in *Love v. Federal Bureau of Prisons*, Plaintiffs "have not asked the court to determine whether the BOP's placement of . . . them violates § 3621." 2025 WL 105845, at *12 (D.D.C. Jan. 15, 2025). Nor could they, as this case challenges the BOP's policy regarding decisions not under § 3621, but under § 3632(d). Just as the considerations outlined in § 3621(b) are inapplicable to the BOP's decision under § 3632(d) not to apply First Step Act credits as required by law, so too is the bar on judicial review inapplicable.

Plaintiffs have already cited a number of cases in which courts agree. ECF 16 (Pls. Br.) at 15. In *Briones-Pereyra v. Warden*, for example, a habeas petitioner challenged a BOP policy declining to apply First Step Act credits to people with immigration detainers. 2024 WL 4171380, at *2 (E.D. Cal. Sept. 12, 2024). Though recognizing that "a district court has no jurisdiction over discretionary designation decisions" under § 3621(b), the court held that dismissal on jurisdictional grounds was "not warranted" because "BOP discretionary action regarding [Earned Time Credits]" could be compelled given that "application of [Earned Time Credits] to eligible prisoners who have earned them is *required*, not discretionary, under the statute." *Id.* (emphasis in original). Like *Briones-Pereyra*, in the cases Plaintiffs cited in their preliminary injunction motion (and others), courts have held that the BOP is *required* to apply First Step Act credits earned by eligible people. ECF 16 at 15, 18 (collecting cases); *see also Harriot v. Jamison*, 2025 WL 384556, at *7 (S.D.N.Y. Feb. 4, 2025) (BOP was "required" to apply petitioner's First Step Act credits toward early release); *Torres v. Gutierrez*, 2024 WL 4182237, at *4 (D. Ariz. Sept. 13, 2024) ("[T]he BOP has no discretion to deny application of [First Step Act] time credits to already-eligible prisoners."). Where the BOP's role is implementing Congress's command in § 3632(d), the jurisdictional bar in § 3621(b) simply does not apply.

Defendants have no substantive answer to these cases—just a conclusory footnote suggesting "[t]he Court should decline to adopt the reasoning of these cases as unpersuasive," ECF 34 (Defs. Br.) at 24 n.9, without providing a single reason why.

None of Defendants' purportedly contrary authorities, *id.* at 23–24, grapple with the totality of Plaintiffs' arguments here. Relying on the text and statutory context of the First Step Act, Plaintiffs argue: (1) the use of "shall" in §§ 3632(d)(4)(C) and 3624(g) imposes a distinct and unambiguous congressional mandate to transfer eligible prisoners to prerelease custody; (2) in the Second Chance Act, Congress qualified the word "shall" with "to the extent practicable," but there is no such qualification in the First Step Act; (3) the Second Chance Act authorized but did not require prerelease custody placements, and accordingly preserved BOP's discretion in these placements by specifying in § 3624(c)(4) that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621"—whereas the First Step Act *requires* certain prerelease placements and contains no similar provision reasserting the discretion § 3621(b) protects; and (4) Congress specified in § 3624(g)(10) that the maximum time limits on prerelease custody under the Second Chance Act "shall not apply to prerelease custody" under the First Step Act, *see* Section (IV)(A)(2), *infra* at 28. None of Defendants' cited cases reject (or even address) all of these arguments. Moreover, this Court's decision in *Love* supports Plaintiffs' position that § 3621(b) does not sweep so broadly as to bar their claims.

Finally, Defendants rely on *Meachum v. Fano*, 427 U.S. 215, 224 (1976), *see* ECF 34 (Defs. Br.) at 19, to support the existence of the "BOP's well-established discretion to designate a prisoner's place of imprisonment," *id.*, but that case, which predated the First Step Act by more than four decades, held only that the Due Process Clause did not entitle a prisoner to a hearing

before being transferred from one state prison to another. It obviously could not, and did not, say anything about the meaning of the First Step Act.

**B. APA Review Is Not Barred by § 3625.**

Plaintiffs' APA challenge to the BOP's policy of not applying First Step Act Earned Time Credits is not precluded by 18 U.S.C. § 3625, which states that the APA "do[es] not apply to the making of any determination, decision, or order *under this subchapter*." 18 U.S.C. § 3625 (emphasis added). As an initial matter, and as discussed in Plaintiffs' motion for a preliminary injunction, ECF 16 (Pls. Br.) at 22, Plaintiffs' claims are based on § 3632, which is simply not in the relevant subchapter.

In addition, this case does not fall within the ambit of § 3625 because it is a challenge to a BOP policy (reflected in both its regulations and practice). Contrary to Defendants' argument, *see* ECF 34 (Defs. Br.) at 27–28, "courts have construed § 3625 more narrowly" to bar review only of "*individualized* housing determinations," and not to policy challenges under the APA. *Love*, 2025 WL, at *11 (emphasis added) (citing *Richmond v. Scibana*, 387 F.3d 602, 605 (7th Cir. 2004)). That view is supported by the legislative history, which shows that Congress enacted § 3625 to "assure[] that the BOP is able to make decisions for a *particular prisoner* without constant second guessing." *Id.* (internal alterations omitted) (quoting S. Rep. No. 98-225, at 149 (1983)).

This understanding of § 3625 finds ample support in the caselaw—both within this Circuit, *see, e.g.*, *Jasperson v. Fed. Bureau of Prisons*, 460 F. Supp. 2d 76, 84 (D.D.C. 2006) (plaintiff's claim was "cognizable under the APA" notwithstanding § 3625 because he "challenge[d] the rulemaking leading to the BOP policy that informed his confinement determination, rather than challenging the determination itself"); *Landry v. Hawk-Sawyer*, 123 F. Supp. 2d 17, 19 (D.D.C. 2000) ("Several courts . . . have determined that jurisdiction to review the validity of [BOP

policies] may be appropriate under the [APA]) (collecting cases), and beyond, *see, e.g.*, *Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2011) (notwithstanding § 3625, "judicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority"); *Fristoe v. Thompson*, 144 F.3d 627, 630–31 (10th Cir. 1998) (similar); *United States v. Phillips*, 853 F. App'x 623, 627 (11th Cir. 2021) (citing § 3625 and stating "we have held that the BOP's determinations under § 3621 are precluded from judicial review, except to the extent that a prisoner seeks to challenge *the underlying rules and regulations* that establish the criteria governing BOP decision-making process.") (emphasis added) (citing *Cook v. Wiley*, 208 F.3d 1314, 1319 (11th Cir. 2000)); *Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[W]e conclude that the question of the BOP's authority to include sentencing factors in its definition is reviewable, and is not precluded by 18 U.S.C. § 3625."); *Gardner v. Grandolsky*, 585 F.3d 786, 788 (3rd Cir. 2009) (reviewing challenge to BOP regulation that "categorically excludes felons whose offense involved possession of a firearm from eligibility for a sentence reduction" violates the APA, 5 U.S.C. § 706(2)(A)).

Because Plaintiffs' APA claim challenges a BOP policy, it is not barred by § 3625.

## IV. Plaintiffs Are Likely to Succeed on the Merits.

### A. Plaintiffs Are Likely to Succeed on the Merits of Their Claims That the BOP's Practice and Regulation Violate the First Step Act.

Plaintiffs are likely to succeed on the merits of their claims that the BOP's failure to transfer eligible people into prerelease custody and its regulation purportedly making such transfers discretionary violate the First Step Act. Defendants contend that the BOP is not violating the First Step Act because the statute does not create any mandatory obligation. Specifically, they argue that (1) the word "shall" in 18 U.S.C. § 3632(d)(4)(C) does not carry its presumptive mandatory

meaning, and (2) the word "or" in that section permits the BOP to refuse to apply some time credits as long as it is applying others. Both arguments miss the mark.

1. *"Shall" in § 3632(d)(4)(C) imposes a mandatory requirement on the BOP.*

As Plaintiffs argued in their motion for a preliminary injunction, and as Defendants do not dispute, "[o]rdinarily, legislation using 'shall' indicates a mandatory duty[.]" *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016); *see also* ECF 16 (Pls. Br.) at 13–14. As Plaintiffs also explained, the statutory context confirms that "shall" in § 3632(d)(4)(C) "is used in its ordinary, mandatory sense" and therefore "imposes a clear duty to act." *In re Nat'l Nurses United*, 47 F.4th 746, 754 (D.C. Cir. 2022); *see also* ECF 16 (Pls. Br.) at 14–15.

To rebut the presumption that "shall" creates a mandatory duty, Defendants must clear a high bar. *See, e.g.*, *Zivotofsky v. Sec'y of State*, 571 F.3d 1227, 1243 (D.C. Cir. 2009) (Edwards, J., concurring), *vac'd on other grounds*, 566 U.S. 189 (2012) ("There are rare exceptions to this rule [that "shall" indicates a mandatory command] that apply only where it would make little sense to interpret 'shall' as 'must.'"); *Murphy v. Smith*, 583 U.S. 220, 223 (2018) ("[T]he word 'shall' usually creates a mandate, not a liberty, so the verb phrase 'shall be applied' tells us that the [relevant entity] has some nondiscretionary duty to perform."); *United States v. Monsanto*, 491 U.S. 600, 607 (1989) (stating that "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory" where statute said "shall forfeit" and "shall order forfeiture"). Indeed, as one appellate court has put it, "the rules of statutory construction presume that the term ['shall'] is used in its ordinary sense *unless there is clear evidence to the contrary*." *Firebaugh Canal Co. v. United States*, 203 F.3d 568, 573–74 (9th Cir. 2000) (emphasis added). Far from clear evidence to the contrary, here, given that § 3624(g), incorporated by reference in

§ 3632(d)(4)(C), uses both "shall" and "may" in adjacent provisions, *see* ECF No. 16 (Pls. Br.) at 14, "'it is a fair inference that the writers intended' the word 'shall' to impose a mandatory duty." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 12 (D.D.C. 2024) (quoting *Anglers*, 809 F.3d at 671).[2]

Defendants fail to rebut the presumptive mandatory meaning of "shall" in this context. Their argument that § 3632(d)(4)(C) is one of the rare instances in which "shall" is permissive is based on the false premise that transferring eligible people into prerelease custody under the First Step Act is a "context[] traditionally committed to the Executive's discretion." ECF No. 34 (Defs. Br.) at 21. They offer no evidence, however, that there is any history or tradition of BOP discretion to apply Earned Time Credits under the First Step Act, a system that Congress only created in 2018. Nor do they offer any other persuasive support for this atextual conclusion.

Courts have recognized that the First Step Act constrains BOP's discretion. With respect to the use of "shall" in § 3632(d)(4)(C), courts have held that "while the BOP has discretion to determine the form of release [*i.e.*, home confinement or a halfway house], transfer to a non-prison setting is mandatory for eligible prisoners." *Ramirez v. Phillips*, 2023 WL 8878993, at *4 (E.D. Cal. Dec. 22, 2023); *see also O'Bryan v. J. W. Cox*, 2021 WL 3932275, at *2 (D.S.D. Sept. 1, 2021) (holding that the word "shall" in § 3632(d)(4) connotes a mandatory obligation on the BOP to apply First Step Act time credits); *United States v. Brodie*, 2024 WL 195250, at *9 (D.N.J. Jan. 18, 2024) ("It is true that application of earned time credits, for eligible defendants, is mandatory,

[2] Defendants' contention in a footnote regarding the use of "may" in § 3624(g) misunderstands Plaintiffs' argument and misconstrues the statutory text. ECF 34 (Defs. Br.) at 22 n.8. Although § 3624(g)(2) sets out certain requirements regarding the conditions of being in home confinement or a halfway house—*e.g.*, a person will be subject to 24-hour electronic monitoring if transferred to home confinement—these requirements have nothing to do with the mandatory nature of the command in § 3632(d)(4)(C) to transfer eligible people out of prison . Nor do they have any bearing on Plaintiffs' argument that Congress's use of "may transfer" to supervised release in § 3624(g)(3) but "shall transfer" to prerelease custody in § 3624(g)(2) demonstrates that the First Step Act makes the transfer of eligible people to prerelease custody mandatory.

as prescribed by use of the word 'shall' in this statute."). A circuit court recently held that "shall" in a preceding provision in the same statute—requiring that "[a] prisoner . . . who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits," 18 U.S.C. § 3632(d)(4)(A)—means that "[t]he award and computation of time credits [under the First Step Act] is mandatory." *Valladares v. Ray*, 2025 WL 595560, at *3 (4th Cir. Feb. 25, 2025). The "normal rule of statutory interpretation [is] that identical words used in different parts of the same statute are generally presumed to have the same meaning," *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005), and that is especially true where, as here, "the same term was used in related provisions enacted at the same time," *Return Mail, Inc. v. United States Postal Serv.*, 587 U.S. 618, 631 (2019) (citing *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007)). On top of all of that, in another provision of the First Step Act, Congress required the Comptroller General to conduct a biennial audit of the risk and needs assessment system at BOP facilities that "shall include analysis of . . . [w]hether the Bureau of Prisons transfers prisoners to prerelease custody or supervised release *as soon as they are eligible for such a transfer* under [18 U.S.C. § 3624(g)]." *See* First Step Act, 132 Stat. 5194, 5213–14 (emphasis added).[3]

The cases Defendants rely on for their atextual interpretation are inapposite. The "well established tradition of police discretion" with respect to whether to make arrests, *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760–61 (2005), the "common sense that all police officers must use some discretion in deciding when and where to enforce city ordinances," *City of Chicago v. Morales*, 527 U.S. 41, 62 n.32 (1999), and the Executive's discretion not to enforce the removal

[3] The surrounding list of items the Comptroller General is instructed to audit makes clear that Congress regarded them as matters BOP was required to accomplish under the statute. *See* First Step Act, 132 Stat.at 5213(*e.g.*, "[w]hether the Bureau of Prisons is able to offer recidivism reduction programs and productive activities (as such terms are defined in section 3635 of title 18, United States Code . . .)").

of noncitizens, *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999), are not analogous to the context of when someone serving a criminal sentence is moved out of prison.[4] Indeed, even in contexts such as immigration where the Executive generally wields wide discretion and where the "ultimate decision whether to grant asylum relief is 'discretionary,'" the use of the word "shall" in the federal immigration statute still "creates a mandatory and non-discretionary duty" to adjudicate asylum applications. *Arabzada*, 725 F. Supp. 3d at 12 (emphasis and citation omitted). Furthermore, the cases Defendants cite share a common theme of "shall" being permissive when the effect is allowing the government to exercise leniency. Here, construing "shall" as permissive would have the opposite effect—sanctioning prolonged incarceration.

Unable to secure a foothold in the statutory text or context, Defendants turn to the goals of prerelease custody—namely, "to afford prisoners 'a reasonable opportunity to adjust to and prepare for . . . reentry . . . into the community.'" ECF 34 (Defs. Br.) at 25 (quoting 18 U.S.C. § 3624(c)(1)). These general goals of prerelease custody, however, do not permit the BOP to violate a specific statutory duty laid plain in the text. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 678 (2020) ("[A] policy concern cannot justify supplanting the text's plain meaning."). Moreover, Defendants cite the wrong goals. Section 3624(c)(1), the provision Defendants cite, comes from a different statute called the Second

[4] The only other cases Defendants cite in support of their argument, *Heckler v. Chaney*, 470 U.S. 821 (1985), and *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), are similarly irrelevant. In *Heckler*, the Court held that the agency had "complete discretion" based on the text and structure of the statute, which contained a "general provision for enforcement" that "provide[d] only that 'the Secretary is *authorized* to conduct examinations and investigations.'" 470 U.S. at 835 (emphasis in original) (quoting 21 U.S.C. § 372). In *McCord*, the court recognized prison officials' "broad discretion . . . in classifying prisoners in terms of their custodial status," 910 F.2d at 1250 (internal quotation marks and citation omitted), but this case does not concern the BOP's classification of people in its custody—it concerns the BOP's statutory duty to transfer eligible people out of prison.

Chance Act, which predates the First Step Act and exists as a separate authority for the BOP to transfer people into prerelease custody. A core goal of the First Step Act, one that Defendants entirely fail to address, is to reduce the risk of recidivism by providing *incentives* for people to engage in recidivism reduction programs while in prison, with a key incentive being early transfer out of prison. *See* 164 Cong. Rec. 7745 (2018) (statement of Sen. Blumenthal); *id.* at 7746 (statement of Sen. Cornyn). Interpreting § 3632(d)(4)(C) as requiring the BOP to apply time credits toward prerelease custody or supervised release and to transfer eligible people out of prison serves these goals.

Defendants' hypothetical and speculative possibilities also fail to support their position that "shall" means "may." Defendants claim that if shall is given its ordinary meaning, the BOP could be required to transfer an eligible prisoner from Baltimore to a halfway house in Montana or Arizona. *See* ECF 34 (Defs. Br.) at 25–26. Even if true, this would be a self-imposed consequence of the BOP's failure to comply with the First Step Act's mandate from *over six years ago* that the BOP ensure "sufficient prerelease custody capacity to accommodate *all* eligible prisoners." 18 U.S.C. § 3624(g)(11) (emphasis added). The vaguely asserted constraints on the BOP are of its own making, and the BOP's violation of one law is not a legitimate excuse to violate another law, nor to distort the plain meaning of the word shall. Moreover, for the reasons discussed above, *see supra* at 16–20, the BOP's discretion under § 3621(b) to determine *where* to place someone—in which halfway house or as between home confinement and a halfway house—is categorically different from *whether* to transfer someone out of prison under § 3632(d)(4)(C).[5]

[5] Defendants' other arguments regarding § 3621(b)—that "[n]othing in the FSA expressly carves out § 3621(b)'s application to transfers to prerelease custody under the FSA," and that § 3264(c)(4)

Defendants therefore have failed to demonstrate that whether to transfer eligible people into prerelease custody *under the First Step Act* is subject to any "deep-rooted tradition of deference to the Executive," ECF No. 34 (Defs Br.) at 22, or that any other aspects of the statutory context satisfy the high bar that is required for the court to read into the word "shall" anything other than its ordinary meaning.

*2. The BOP is required to apply time credits toward prerelease custody if they are not applied toward supervised release.*

Section 3632(d)(4)(C) provides that "[t]ime credits earned . . . shall be applied toward time in prerelease custody *or* supervised release" and the BOP "shall transfer eligible prisoners . . . into prerelease custody *or* supervised release." § 3632(d)(4)(C) (emphasis added). Defendants claim that the use of the word "or" in these provisions means they can refuse to apply some time credits as long as they are applying others. That is not a plausible reading of the statute.

The parties agree that the word "or" in § 3632(d)(4)(C) is used in its ordinary disjunctive and inclusive nature. *See* ECF 35 (Defs. Br.) at 28. And they agree that the combination of the word "shall" with the ordinary meaning of the word "or" in § 3632(d)(4)(C) requires the BOP to apply time credits toward *either* prerelease custody *or* supervised release *or* both. *Id*. at 29 ("BOP can satisfy § 3632(d)(4)(C) in one of three ways: applying time credits to supervised release, applying time credits to prerelease custody, or applying time credits to supervised release and prerelease custody.").

If there were no limits on how many time credits could be applied toward prerelease custody or supervised release, then the BOP would have a free choice between the above

"contains a provision expressly incorporating BOP's discretion under § 3621," ECF 34 (Defs. Br.) at 22–23 (emphasis omitted), fail for the same reasons discussed above explaining that the obligation to transfer eligible people out of prison under § 3632(d)(4)(C) is outside the scope of § 3621(b), *see supra* 28–29.

alternatives. For example, if a person has 500 time credits and 500 days remaining on his or her sentence, the BOP could transfer the person to prerelease custody for 500 days, or to begin supervised release 500 days early, or to any combination that totals 500 days. But the statute imposes a limit on how many credits can be applied toward beginning supervised release early—not more than 365. 18 U.S.C. § 3624(g)(3). So if an eligible person has 500 credits and 500 days remaining on his or her sentence, the BOP still "shall transfer" the person as mandated by the second sentence of § 3632(d)(4)(C), and since supervised release is not yet available (because it always comes last, before freedom), the person must be transferred to prerelease custody for at least 135 days, because that is the only way for the BOP to satisfy the statutory command that it "shall transfer" the "eligible prisoner[]."

Consider an analogy. The BOP Director calls a florist and says, "Deliver a dozen roses to my home. You may send red or white." When he gets home, he finds that seven roses were delivered. He calls the florist and asks, "why only seven?" The florist responds, "I opted to deliver red roses, and we had only seven of those." The Director asks, "did you have any white roses?" The florist replies, "yes, we had plenty of white roses, but I had decided to send red roses, and you told me I could deliver either color." Did the florist obey the Director's instructions?

Under Defendants' interpretation, he did. But it is obvious that he did not. The florist's choice between red and white roses was constrained by the limited number of red roses available at the shop. But that constraint did not override the overarching instruction to deliver a dozen roses. The florist had discretion to deliver a dozen white roses, or six red and six white, or seven red and five white. But he did not have discretion to deliver just seven roses. The same is true here: BOP's choice between prerelease custody or early supervised release is constrained by the 365-day limit on early supervised release. But that choice does not override the overarching

statutory command that BOP *shall transfer* a person whose time credits equal the remainder of his or her sentence. In contrast, the First Step Act contains no maximum limit on the number of time credits that can be applied toward prerelease custody or on the number of time credits people can earn.

Defendants' interpretation is at odds with the statute and with common sense. In their view, if a person earns, for example, 500 time credits, the BOP's application of 365 time credits toward early supervised release would satisfy its obligation under § 3632(d)(4)(C) even though it plainly would not be "appl[ying]" the person's Earned Time Credits "toward time in prerelease custody or supervised release" because it would not be applying 135 time credits *at all*. (It would be delivering only seven roses). Indeed, under Defendants' interpretation, even if the BOP applies *only one* time credit toward early supervised release (delivers only one red rose), it has satisfied its obligation under § 3632(d)(4)(C). Although "or" gives the BOP a choice *among* options for applying time credits, it does not permit the BOP to choose not to apply some of the credits *at all* (to deliver fewer than twelve roses). If Congress wanted the BOP to have the option of not applying some Earned Time Credits at all, it could have and would have said so.

In addition, Defendants are mistaken in their argument that "Plaintiffs read § 3632(d)(4)(C) as requiring BOP to apply 365 earned time credits toward supervised release." ECF 34 (Defs. Br.) at 29. Plaintiffs acknowledge that BOP is applying 365 time credits toward early supervised release for eligible people, but do not argue that BOP is required to do so. Instead, Plaintiffs contend that the First Step Act does not permit Earned Time Credits to go unapplied—the statute requires that all time credits be applied toward one, or the other, or both of two options; it does not permit some to go unused such that an eligible person sits in prison with credits greater than the remainder of his or her sentence. And given the careful consideration and precision with which

the statute provides that participation in recidivism reduction programming will translate to "days of time credits," 18 U.S.C. §§ 3632(d)(4)(A)(i)–(ii), it would be odd for Congress to have mandated such exact calculations only to permit the BOP to disregard them, thus undermining the intended incentivizing effect of the time credits.[6]

Moreover, Defendants never address the fact that the First Step Act does not include the "to the extent practicable" qualifier present in other references to prerelease custody, such as in the Second Chance Act. *See id.* § 3624(c)(1) (the BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community"); *see also* ECF 16 (Pls. Br.) at 14. That same clause, "to the extent practicable," appears in §§ 3624(c)(2)–(3) and once in § 3624(g)(4), with respect to imposing "increasingly less restrictive conditions" for people placed in prerelease custody "who demonstrate continued compliance with the conditions of such prerelease custody." The absence of qualifying language in the relevant First Step Act provisions of § 3624 demonstrates that Congress did not intend for the discretion afforded to the BOP in transfers to prerelease custody under the Second Chance Act to apply to transfers to prerelease custody under the First Step Act. *See AT&T Corp. v. F.C.C.*, 369 F.3d 554, 561 (D.C. Cir. 2004) (absence of qualifying language in statute supported position that statute safeguarded sunset provisions "by operation of law"). Further differentiating prerelease custody under the First Step Act from that under the Second Chance Act, § 3624(g)(10) of the First Step Act specifies that

[6] *See also* 87 Fed. Reg. 2705, 2706 (Jan. 19, 2022) (comments from Senators Whitehouse and Cornyn objecting to the BOP's proposed rule regarding First Step Act time credits, noting that the rule's "narrow definition of a 'day' does not adequately incentivize program participation and reduce recidivism as intended by the First Step Act").

"[t]he [maximum] time limits [on prerelease custody under the Second Chance Act] shall not apply to prerelease custody under this subsection." These distinctions make clear that any discretion the BOP has with respect to prerelease custody under the Second Chance Act does not apply to prerelease custody under the First Step Act.

Defendants' arguments that BOP has discretion over when to transfer people to prerelease custody under the First Step Act also fail to address a fundamental aspect of the way the statute is designed. Specifically, when Congress said the BOP "shall transfer eligible prisoners," 18 U.S.C. § 3632(d)(4)(C), it defined "eligible prisoners" in the First Step Act by a specific point in time: when a person's time credits equal the remainder of his or her sentence. *Id.*; *id.* § 3624(g)(1)(A). There is no reason for Congress to have specified that people are eligible when their time credits equal the remainder of their sentence if it intended the BOP to have discretion over when to transfer people into prerelease custody.

Lastly, Defendants' argue that the BOP's use of "may" in its regulation is "consistent with the proper reading of the statute[.]" ECF 34 (Defs. Br.) at 29–30. That argument fails for the same reasons discussed above. Defendants selectively quote in a footnote only subsection (b) of the regulation, which accurately states that the BOP "may apply FSA Time Credits toward prerelease custody or early transfer to supervised release . . . only if an eligible inmate has [satisfied the eligibility criteria]." 28 C.F.R. § 523.44(b) (emphasis added); *see* ECF 34 (Defs. Br.) at 30 n.10 (citing only 28 C.F.R. § 523.44(b)); *id.* at 29 (citing only 28 C.F.R. § 523.44(b)–(d)). The flaw in the regulation, however, is in subsection (a), which states that the BOP "*may* apply FSA Time Credits toward prerelease custody or supervised release" when all of the relevant criteria are satisfied, 28 C.F.R. § 523.44(a)(1) (emphasis added), not that it "shall" do so, as required by the First Step Act. While the BOP indeed *may* transfer a person *only if* the person satisfies the relevant

criteria, it *shall* transfer a person who *does* satisfy the relevant criteria. The regulation contradicts that statutory provision.

### B. The Court Has Inherent Equitable Power to Enjoin the BOP from Violating the First Step Act, and Defendants' Arguments Regarding *Ultra Vires* Are Misplaced.

Federal courts possess inherent equitable power to "grant injunctive relief . . . with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015). Here, the Court can exercise its inherent equitable power to enjoin the BOP from violating the First Step Act and require it to transfer eligible people into prerelease custody as mandated by the statute.

Defendants' argument fails at the outset because it mistakenly conflates a claim that an agency is violating a statutory mandate, which a court has inherent equitable power to enforce, with an entirely different claim that Plaintiffs have not raised—that an agency is exceeding its power under its organic act and subsequent legislation, known as an *ultra vires* claim. Indeed, Plaintiffs' complaint never even uses the phrase "ultra vires." Plaintiffs' inherent equitable power argument relies on the "long history of judicial review of illegal executive action" via claims in equity that, as Justice Scalia chronicled in his opinion for the Court in *Armstrong*, "trace[s] back to England." *Id.* Such equity jurisdiction is presumptively available "absent only 'the clearest command' otherwise in a statute, . . . either express or implied." *Mathis v. U.S. Parole Comm'n*, 2024 WL 4056568, at *11 (D.D.C. Sept. 5, 2024) (citation omitted). As Plaintiffs demonstrated in their motion for a preliminary injunction, ECF 16 (Pls. Br.) at 17–20, and above, *supra* at 17–22, there is no such explicit or implicit limitation on the Court's equitable power to enjoin the BOP from violating (or ordering it to obey) the First Step Act. The Court therefore retains its traditional equitable authority to order the BOP to transfer people into prerelease custody when they become eligible, as required by the First Step Act.

Plaintiffs' inherent equitable power claim is different from an *ultra vires* claim; the former invokes a court's power to enjoin agency action that violates a statutory provision, whereas the latter enables a court to rein in an agency that is acting entirely beyond the scope of its jurisdiction. "[A]n *ultra vires* challenge is distinct from statutory review of an agency action taken 'within [the agency's] jurisdiction,' and is available only for the narrow purpose of obtaining injunctive relief against agency action taken 'in excess of its delegated powers and contrary to a specific prohibition' in the law." *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022) (second alteration in original) (quoting *Leedom v. Kyne*, 358 U.S. 184, 188 (1958)). "To prevail on an *ultra vires* claim," a plaintiff would have to establish, among other elements, that "'the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory.'" *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022) (quoting *DCH Reg'l Med. Ctr. v. Azar*, 952 F.3d 503, 509 (D.C. Cir. 2019)).

Defendants are wrong to suggest that Plaintiffs have brought an *ultra vires* claim for two reasons. *First*, Plaintiffs do not argue that by failing to transfer eligible people as required by the First Step Act, the BOP is acting outside its jurisdiction.[7] "An agency only acts *ultra vires* when it exceeds a clear and mandatory limit on its regulatory jurisdiction." *Baxter Healthcare Corp. v. Weeks*, 643 F. Supp. 2d 111, 115 n.2 (D.D.C. 2009); *see also, e.g.*, *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022) (*ultra vires* review is available when an agency acts "outside of the authority Congress granted"); *Sahaviriya Steel Indus. Pub.*

[7] Although Plaintiffs alleged in their complaint and argued in their motion for a preliminary injunction that the BOP's regulation is "in excess of statutory authority," ECF 1 (Compl.) at ¶ 46, and "in excess of BOP's statutory jurisdiction," ECF 16 (Pls. Br.) at 24, those claims pertain only to the BOP's promulgation of its regulation—*not* the BOP's practice of failing to transfer eligible people into prerelease custody—and are brought under §§ 706(2)(A) and 706(2)(C) of the APA, not *ultra vires* review.

*Co. v. United States*, 33 C.I.T. 140, 152 (2009) ("An *ultra vires* act is one performed without any authority to act whereas an error in the exercise of that power is insufficient to support an *ultra vires* claim."). For example, "[t]here is no question that [the Department of Health and Human Services ("HHS")] has the authority under the Medicare statute to determine whether a product is a single source drug, a biological, or a multiple source drug. Whether HHS made the correct determination about [a specific drug] is a routine 'dispute over statutory interpretation' that does not rise to the level of an *ultra vires* claim." *Baxter Healthcare Corp.*, 643 F. Supp. 2d at 115 n.2 (quoting *Dart v. United States*, 848 F.2d 217, 231 (D.C. Cir. 1988)).

Plaintiffs do not dispute that the BOP has the authority to act under the First Step Act. Nor do they challenge the "'composition or 'constitution'" of the BOP. *Baxter Healthcare Corp.*, 643 F. Supp. 2d at 115 n.2 (quoting *Mitchell v. Christopher*, 996 F.2d 375, 378 (D.C. Cir. 1993)). Instead, Plaintiffs' claim is a "'dispute over statutory interpretation'"—namely, whether the BOP is erring in the exercise of its authority under the First Step Act by failing to transfer people when they become eligible—"that does not rise to the level of an *ultra vires* claim." *Id.* (quoting *Dart*, 848 F.2d at 231).

*Second*, Plaintiffs do not seek judicial review in the face of a statutory preclusion on review. Unlike inherent equitable power, *ultra vires* review applies "'even when a statute [implicitly] precludes review.'" *Am. Hosp. Ass'n v. Azar*, 964 F.3d 1230, 1238 (D.C. Cir. 2020) (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009)); *see also Fresno Cmty. Hosp. & Med. Ctr. v. Azar*, 370 F. Supp. 3d 139, 151 (D.D.C. 2019), *aff'd*, 987 F.3d 158 (D.C. Cir. 2021) ("Under the ultra vires doctrine, courts have jurisdiction to review an agency's action, despite the presence of a preclusion statute, if that agency action 'is *ultra vires*, i.e., beyond the scope of its lawful authority.'") (quoting *Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Hum.*

*Servs.*, 830 F.3d 515, 522 (D.C. Cir. 2016)). Plaintiffs' challenge does not implicate *ultra vires* review because it does not "ask[] [this Court] to remedy a 'statutory violation even when a statute [implicitly] precludes review.'" *Am. Hosp. Ass'n*, 964 F.3d at 1238 (brackets omitted) (quoting *Nyunt*, 589 F.3d at 449). Plaintiffs' argument in the alternative, that the Court can order the BOP to transfer eligible people into prerelease custody under § 706(1) of the APA, *see* ECF 16 (Pls. Br.) at 20–23; Section (IV)(C), *infra* 37–38, further undermines Defendants' *ultra vires* argument because there is an "'alternative procedure for review of the statutory claim.'" *Fed. Express Corp.*, 39 F.4th at 763 (quoting *Nyunt*, 589 F.3d at 449).

Inherent equitable power is available to the Court to grant Plaintiffs and the putative class injunctive relief. In *Mathis*, this Court held that it "has inherent equitable power to enjoin the Government"—in that case, two federal agencies and the heads of those agencies sued in their official capacities—"from further violating the Rehabilitation Act" by failing to provide reasonable accommodations for individuals with disabilities placed on parole or supervised release. 2024 WL 4056568, at *6. Nowhere in its decision did the Court discuss *ultra vires* review. Nor would that have made a difference: Inherent equitable power is not subject to the same limitations as *ultra vires* review because, as noted above, *ultra vires* review is available "despite the presence of a preclusion statute" and therefore justifies a heightened standard, whereas equity jurisdiction is presumptively available "absent only 'the clearest command' otherwise in a statute." *Id.* at *11 (citation omitted). Indeed, the availability of other causes of action that permit injunctive relief—such as the APA or 42 U.S.C. § 1983—do not preclude the application of the Court's inherent equitable power to enjoin violations of federal law by public officials. For instance, in the civil rights enforcement context, courts of appeals have expressly applied inherent equitable power to enjoin unlawful action by municipal actors even where § 1983 could have been but was

not invoked, *Moore v. Urquhart*, 899 F.3d 1094 (9th Cir. 2018), or where § 1983 was unavailable, *Crown Castle Fiber, L.L.C. v. City of Pasadena*, 76 F.4th 425 (5th Cir. 2023).

The Court's inherent equitable power extends to violations of federal law by federal officials and agencies that, as here, may not be *ultra vires*. It therefore exists as a separate authority available to this Court to enter injunctive relief in favor of Plaintiffs.

### C. Alternatively, This Court Can Compel the BOP to Transfer Eligible People as Required by the First Step Act Under § 706(1) of the APA.

As an alternative to exercising its inherent equitable power, this Court can order the BOP to transfer eligible people as required by the First Step Act under § 706(1) of the APA.

Each of Defendants' preliminary arguments regarding Plaintiffs' § 706(1) claim fails to persuade. *First*, Defendants' argument that there is no final agency action because "BOP cannot determine an inmate's eligibility for transfer prior to their actual eligibility," ECF 34 (Defs. Br.) at 32, misunderstands Plaintiffs' claim. Plaintiffs do not argue that the BOP must transfer people to prerelease custody prior to their actual eligibility—only that the BOP must transfer people when they become eligible, which it is not doing. When that date passes without a transfer, there has been final agency action. *Second*, their argument that "there is nothing to compel" because Ms. Crowe was already transferred to prerelease custody and Mr. Galemmo was set to be transferred when he became eligible, *id.* at 33, fails for the same reasons Defendants' mootness arguments fail, *see supra* at 10–16, and because the Court can compel the BOP to act with respect to the putative class even on a provisional basis, *see* ECF 16 (Pls. Br.) at 30–31. Finally, Plaintiffs' purported "fail[ure] to adequately plead any § 706(1) claim" in their complaint, ECF 34 (Defs. Br.) at 27, does not preclude the Court from considering the claim, especially given the liberal standard for amending a complaint under Federal Rule of Civil Procedure 15. *See Skinner v.*

*Switzer*, 562 U.S. 521, 530 (2011) ("[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory.").

Defendants' other arguments on Plaintiffs' § 706(1) claim are also meritless.

1. *TRAC does not apply to Plaintiffs' "unlawfully withheld" agency action claim.*

The BOP's failure to transfer eligible people constitutes a "fail[ure] to take a discrete agency action that [the BOP] is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted). The challenged inaction here is therefore "agency action unlawfully withheld," rather than action that is "unreasonably delayed." 5 U.S.C. § 706(1).

Defendants' argument misreads the complaint. The crux of Plaintiffs' complaint is that the BOP is violating a "deadline or duty." *Friends of The Earth v. U.S. Dep't of Interior*, 478 F. Supp. 2d 11, 25 (D.D.C. 2007). This Court has recognized a difference between "unlawfully withheld" agency actions and "unreasonably delayed" agency actions: "Where the agency does not have a clear duty to act and Congress has not prescribed a deadline, the question becomes whether the agency's delay is unreasonable." *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 75–76 (D.D.C. 2022) (quotations omitted). Conversely, where, as here, the agency is required by statute to take a discrete action within a certain time period, a court can compel the agency to act. *See, e.g.*, *Pate v. Fed. Bureau of Prisons*, 2021 WL 5038636, at *1 (D.D.C. Oct. 29, 2021), *aff'd* 2023 WL 2436223 (D.C. Cir. Mar. 6, 2023) (allegations that the BOP failed to take certain actions in response to Plaintiff's request for compassionate release "reasonably construed to compel agency action unlawfully withheld under Section 706(1)"); *South Carolina v. United States*, 907 F.3d 742, 755 (4th Cir. 2018) (agency's failure to take a statutorily required action by the statutory deadline "constituted an unlawfully withheld agency action within the meaning of § 706(1)").

Plaintiffs' allegations are not, as Defendants argue, "based on a contention that the BOP is

not transferring individuals as *promptly* as Plaintiffs contend is required." ECF 34 (Defs. Br.) at 33 (emphasis in original). Plaintiffs' challenge is centered on the BOP's failure to transfer Plaintiffs to prerelease custody when the law required, not unreasonably delaying their transfer in the absence of such a deadline. As to Ms. Crowe, the BOP's violation was complete on December 25—had the BOP transferred her on December 25, it would have no more complied with the statute than it did when it actually transferred her on January 15. The gravamen of Plaintiffs' lawsuit is that by failing to transfer "eligible prisoners"—*i.e.*, eligible people whose time credits equal the remainder of their sentences—the BOP is failing to take a discrete action that it is statutorily required to take by a specific date. Plaintiffs' claim is thus no different from other cases where this Court and other courts have compelled unlawfully withheld agency action under § 706(1) without invoking the multi-factor balancing test in *Telecomms. Rsch. & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). *See, e.g.*, *Kirwa v. U.S. Dep't of Def.*, 285 F. Supp. 3d 21, 41–42 (D.D.C. 2017) (plaintiffs were likely to succeed on the merits of their unlawfully withheld claim without mentioning *TRAC*); *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2002) (declining to apply *TRAC* to unlawfully withheld claim because Congress "specifically provided a deadline for performance, . . . so no balancing of factors is required or permitted"); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190–91 (10th Cir. 1999) (same).

Defendants have not offered a single binding case that holds that *TRAC* applies to unlawfully withheld agency action claims, whereas three circuit court decisions have held that it does not. *See Biodiversity Legal Found.*, 309 F.3d at 1177 n.11; *Forest Guardians*, 174 F.3d at 1190–91; *South Carolina*, 907 F.3d at 760–61. In *TRAC* itself, the court established and applied the six-factor test "[i]n the context of a claim of unreasonable delay." 750 F.2d at 79. That made sense because without a statutory deadline, courts need some way to assess the reasonableness of

the delay. *See Cobell v. Norton*, 240 F.3d 1081, 1096 (D.C. Cir. 2001) (applying a multi-factor test to unreasonable delay claim where there was no statutory deadline). By contrast, "when Congress by organic statute sets a specific deadline for agency action, neither the agency nor any court has discretion. The agency must act by the deadline. If it withholds such timely action, a reviewing court must compel the action unlawfully withheld." *Forest Guardians*, 174 F.3d at 1190. As the Fourth Circuit recently noted, "we are aware of no federal court applying the reasoning of 'unreasonably delayed' jurisprudence to 'unlawfully withheld' cases." *South Carolina*, 907 F.3d at 760.

Nor have Defendants pointed to a case where the court applied the *TRAC* factors to a claim that agency action was unlawfully withheld. In one of the cases on which Defendants rely, *In re Barr Lab'ys, Inc.*, 930 F.2d 72 (D.C. Cir. 1991), the court did not cite § 706(1) and never considered whether agency action was "unlawfully withheld" as opposed to "unreasonably delayed," and thus had no occasion to consider the distinction between such claims. Rather, because the Plaintiff appears to have framed its challenge squarely in terms of the *TRAC* factors, *see id.* at 73 (opening sentence of opinion: "Barr Laboratories has filed a petition in this court, see *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 74–79 (D.C. Cir. 1984) ('TRAC'), seeking a writ of mandamus to compel the Food and Drug Administration to act promptly . . . ."), the court simply followed its lead in applying that framework. *See id.* at 74–76.

Defendants also cite *In re Center for Auto Safety*, 793 F.2d 1346 (D.C. Cir. 1986), which actually cuts against their position. There again, "[t]he petitioners . . . challenged a pattern of delay by the agency," 793 F.2d at 1348 (emphasis omitted), not agency action unlawfully withheld. Moreover, although a statutory deadline was at issue and the court cited *TRAC* once, it did not actually apply its six-factor scheme, instead abandoning all discussion of *TRAC* after observing

that "Congress created a specific deadline." *Id.* at 1353. Admittedly, the court's merits analysis is brief, and the court did not make a clear determination that *TRAC* does *not* apply to statutory-deadline cases. Nonetheless, the decision cannot be read to apply *TRAC* to such a case, and in any event, does not undermine the more recent decisions by several courts of appeals drawing a clear line between *TRAC* cases and "unlawfully withheld" agency action cases.

The weight of the authority therefore favors the view that the *TRAC* factors do not apply to claims alleging that agency action is being unlawfully withheld.

*2. Even if TRAC did apply here, the TRAC factors favor Plaintiffs.*

Even if this Court were to apply the six *TRAC* factors here, all six favor Plaintiffs.

<u>"Rule of reason" and timetable provided by Congress (first and second factors)</u>: Congress's inclusion of a specific point in time at which eligible people must be transferred weighs against Defendants and in favor of Plaintiffs. Defendants' only "identifiable rationale," *Vafaei v. U.S. Citizenship & Immigr. Servs.*, 2024 WL 1213394, at *4 (D.D.C. Mar. 21, 2024) (internal quotation marks and citation omitted), for the BOP taking as long as it does to transfer eligible people is that it "weigh[s] several individualized considerations about the prisoner's circumstances and BOP's prerelease custody capacity," ECF 34 (Defs. Br.) at 35. But that does not explain why the BOP has consistently and systemically failed to transfer people when they become eligible. *See Desai v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 1110737, at *6 (D.D.C. Mar. 22, 2021) ("rule of reason" factor favors Plaintiffs when "accounting for Congress' stated goal of processing visa petitions within six months compared to Plaintiff's waiting time of more than one year").

<u>Human health and welfare and interests prejudiced by delay (third and fifth factors)</u>: Defendants concede that "Plaintiffs' interests in earlier transfer implicate their welfare," but contend that "[t]he considerations underlying BOP's placement designations" do too. ECF 34

(Defs. Br.) at 35. The injunctive relief Plaintiffs seek, however, would not prevent the BOP from ensuring that prerelease custody helps eligible people readjust to their communities. The BOP retains discretion as to where—in home confinement or which specific halfway house—it places eligible people. These factors therefore weigh decisively in favor of Plaintiffs.

Competing agency priorities (fourth factor): Defendants' arguments concerning limits on the availability of bed space in halfway houses and monitoring capacity in home confinement, ECF 34 (Defs. Br.) at 35–36, are problems of the BOP's own making. The First Step Act required the BOP to "ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners" when it was enacted over six years ago. 18 U.S.C. § 3624(g)(11). Weighing this factor in favor of Defendants would be rewarding the BOP for creating obstacles to justify its failure to follow the law. Moreover, Defendants offer no support or evidence, either on an individualized or systemic basis, for their vague assertions regarding their alleged capacity concerns. And once this lawsuit was filed, the necessary capacity for Plaintiffs somehow materialized. This factor also weighs in Plaintiffs' favor.

Agency impropriety (sixth factor): Under this last factor, "the court need not find any impropriety lurking behind agency lassitude." *TRAC*, 750 F.2d at 80 (internal quotation marks and citation omitted). Plaintiffs accordingly did not need to "assert any impropriety on the part of BOP," as Defendants contend. ECF 34 (Defs. Br.) at 36. In any event, the BOP's failure to transfer eligible people into prerelease custody on a systemic basis, particularly in light of its duty to ensure sufficient prerelease capacity to accommodate all eligible prisoners, shows that the BOP has "assert[ed] utter indifference to a congressional deadline." *In re Barr Lab'ys, Inc.*, 930 F.2d at 76. This factor therefore weighs in favor of Plaintiffs as well.

## V. The Balance of Equities and Public Interest Favor Plaintiffs.

Defendants acknowledge that "the interest of eligible prisoners in transfer to prerelease custody as soon as possible is undoubtedly great." ECF 34 (Defs. Br.) at 36. They also do not dispute that putative class members are suffering and will suffer irreparable harm by spending time in prison that they should spend in prerelease custody. They contend, however, that the balance of equities does not support a preliminary injunction because the BOP must "balance its competing statutory obligations, its limited resources, the individual circumstances of each prisoner, and the purposes of prerelease custody." *Id.* at 37. In doing so, they again rely on policy considerations found nowhere in the statute to justify their violation of the plain text of the statute. In enacting the First Step Act, Congress took into account the BOP's resources and other obligations and nonetheless explicitly instructed it to "ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners." 18 U.S.C. § 3624(g)(11). The BOP's failure to comply with one statutory provision does not excuse its failure to comply with another.

Defendants' arguments defy the history of the First Step Act and the BOP's own prior statements. The First Step Act's requirements are not new to the BOP. Indeed, as noted above, the BOP has had *over six years*, since December 2018 when the First Step Act was enacted, to plan for proper implementation of the statute's requirements.

To facilitate implementation, the First Step Act included multiple phase-in periods, including one that provided the BOP "until January 15, 2022 to provide [evidence-based recidivism reduction programs] and [productive activities] to all inmates." *Potarazu v. Warden, Fed. Corr. Inst. - Cumberland*, 2023 WL 6142990, at *3 (D. Md. Sept. 20, 2023); *see also* 18 U.S.C. §§ 3621(h)(2)–(4). The inclusion of phase-in periods demonstrates that Congress accounted for the resources and changes the First Step Act would require, and it therefore permitted

a temporary period for transition that would allow for the orderly development of a new permanent framework the BOP would be required to implement. Moreover, the BOP itself stated in response to comments regarding its resources during the notice-and-comment process when the BOP issued its final rule regarding First Step Act time credits in January 2022 that "while the Bureau recognizes that resources have been strained, future funding allotments will enhance the Bureau's course offerings and serve to bolster the Bureau's resources, improving its ability to carry out the FSA Time Credits program across all Bureau facilities."[8] And in Fiscal Year 2020, there was a $10 million allocation specifically for the expansion of capacity for prerelease custody.[9]

Defendants have not addressed any of this evidence. Instead, they present vague arguments regarding the BOP's competing obligations and resource limits. Defendants contend, for example, that the BOP "does not have the unilateral ability to expand its capacity" due to caps on the number of available beds and home confinement slots in contracts the BOP has with third parties, ECF 34 (Defs. Br.) at 37, but they fail to explain why the BOP has not entered into additional contracts and/or attempted to negotiate or amend these caps in order to comply with Congress's mandate in § 3624(g)(11). Nor do Defendants explain how, notwithstanding the BOP's alleged capacity limitations, the BOP was able to find capacity to transfer Plaintiffs shortly after this lawsuit was filed. Defendants' other purported justifications are similarly unpersuasive and fail to tip the equities in their favor given Plaintiffs' extremely weighty interest in avoiding prolonged incarceration. The declaration from Bianca Shoulders that Defendants provided states that "BOP does not currently have unlimited prerelease custody capacity to accommodate every inmate's

---

[8] 87 Fed. Reg. at 2709.

[9] U.S. Dep't of Justice, Office of the Att'y Gen., The First Step Act of 2018: Risk and Needs Assessment System – UPDATE (Jan. 2020), available at https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf.

needs in the proper geographic area under the FSA," ECF 34–1 (Shoulders Decl.) at ¶ 24, but it provides no evidence to support that bald assertion. Section 3621(b) as amended by the First Step Act states that "to the extent practicable," a person should be placed in a facility "within 500 driving miles" of his or her primary residence, 18 U.S.C. § 3621(b), but it does not require or specify a "proper geographic area." Nor does the First Step Act require that an eligible person be placed in a halfway house or home confinement in a "particular community" as Defendants argue. ECF 34 (Defs. Br.) at 37. What it requires is that eligible people be moved out of prison.

The BOP can, and should, take into account individual considerations when determining *where* an eligible prisoner is transferred for prerelease custody. Plaintiffs do not contend otherwise. But those considerations cannot serve as excuses for the BOP to systematically incarcerate people longer than the law allows.

## CONCLUSION

The Court should deny Defendants' motion to dismiss, provisionally certify the Plaintiff class, and grant the requested preliminary injunction as to the class.

[signatures on following page]

Dated: March 3, 2025

Respectfully submitted,

*/s/ Elizabeth Henthorne*
Elizabeth Henthorne (D.C. Bar No. 1562688)
Brantley A. Butcher (D.C. Bar No. 90029703)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 637-6367
bhenthorne@jenner.com
bbutcher@jenner.com

Julius Mitchell* (D.C. Bar No. 1671322)
JENNER & BLOCK LLP
1155 6th Avenue
New York, NY 10036
(212) 891-1600
julius.mitchell@jenner.com

*/s/ Emma A. Andersson*
Emma A. Andersson* (CA Bar No. 260637)
Julian Clark* (NY Bar No. 5824180)
American Civil Liberties Union Foundation
125 Broad St. – 18th Floor
New York, NY 10004
(212) 549-2500
eandersson@aclu.org
jclark@aclu.org

*/s/ Aditi Shah*
Aditi Shah**
Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
ashah@acludc.org
aspitzer@acludc.org
smichelman@acludc.org

**Admitted pro hac vice.*

***Admitted pro hac vice; not admitted in DC; practice limited to matters before federal courts and District of Columbia agencies.*

*Attorneys for Plaintiffs and the Proposed Class* ±

± Counsel wish to acknowledge the assistance of paralegals Kenyon North and Ameerah Adetoro in the preparation of this brief.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 3rd day of March, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record. Counsel for Plaintiffs will also cause a copy of the foregoing to be served via Federal Rule of Civil Procedure 5(b)(2)(E).

By: /s/ *Elizabeth Henthorne*
Elizabeth Henthorne